## CHARLES COE *against* NOAH TALCOTT.

*A.* as administrator of the estate of *B.* under authority of a decree of probate, sold certain lands of the intestate to *C.* for the payment of debts ; and by the same deed, granted to *C.* a special privilege of conveying a part of the water of a brook across other adjoining lands of the intestate, upon the land sold ; the land on which this privilege was granted, was afterwards, legally distributed to *A.* as heir at law of *B.*—*A.* afterwards conveyed this land by deed, without any reservation of the special privilege granted to *C.* And after sundry legal conveyances and dispositions, the title to the land distributed to *A.* became vested in *D.* and the title to the land granted by *A.* to *C.* became vested in *E.* In an action brought by *E.* against *D.* for obstructing the passage of the water through the land of the defendant, it was held, that the defendant was estopped to deny the right of *A.* to grant the special privilege as set forth in his deed to *C.*

THIS was an action on the case. It was alleged in the declaration, that the plaintiff was the proprietor and possessor of a certain piece of land in *Durham*, in the county of *Middlesex*, containing about nine acres ; that near this piece of land, a perpetual stream of water took its rise, and in its natural course, flowed upon, and across the defendant's land, to the land of the plaintiff before mentioned, over which it had immemorially flowed; and that the plaintiff possessed a right to use such stream of water to fertilize his land.

It was also alleged, that in addition to the right of using the water of such stream flowing in its natural course, the plaintiff was vested with a special right to divert the one half of such stream of water from its natural course, and to turn it across the defendant's land in such a manner as to cause it to flow upon the land of the plaintiff, and for that purpose, to enter upon the defendant's land and plow and dig the soil ; and that such special right had been enjoyed by the plaintiff, and those under whom he claimed, for more than thirty years. It was then averred, that great benefit resulted to the plaintiff from the use of the water in the manner above stated ; and that from the 13th day of *March*, 1804, to the time of bringing the action, the defendant had obstructed the plaintiff in the enjoyment of such special right, by damming up the trench which had been made for the purpose of conveying the one half of such stream of water upon his land, and had also, during the same period, deprived him of the use of the water flowing in its natural course, by damming up the channel of the principal stream ; whereby the water was wholly diverted from the plaintiff's land, &c.

On the trial of the cause, the plaintiff, to establish his right of recovery on the ground of the special privilege

alleged in the declaration, produced in evidence to the jury, a deed from *Hezekiah Talcott* to *James Arnold*, of the following tenor, to wit, " To all people to whom these presents shall come, Greeting : Whereas the General Assembly held at *New-Haven*, on the second Thursday of *October*, A. D. 1766, did empower *Hezekiah Talcott*, of *Durham*, in the county of *New-Haven*, in the Colony of *Connecticut*, in *New-England*, administrator on the estate of *John Talcott*, late of said *Durham*, deceased, to sell so much of the real estate of said deceased as would produce the sum of 118*l*. 9*s*. 3*d*. lawful money, with incident charges arising on said sale, taking the direction of the court of probate for the district of *Middletown*, therein : And whereas a court of probate, held at *Middletown*, on the 5th day of *January*, A. D. 1767, did direct said *Hezekiah Talcott* to sell so much of the real estate of said deceased as will produce said sum of 118*l*. 9*s*. 3*d*. lawful money, with the incident charges arising, at private sale, if he can get the inventory price, and to give deed or deeds accordingly. Therefore, I the said *Hezekiah Talcott*, by virtue of the power to me given by said General Assembly, for the consideration of fifteen pounds, received to my full satisfaction, for the purpose of defraying the debts of said deceased, of *James Arnold* of *Durham* aforesaid, do give, grant, bargain, sell, convey and confirm unto the said *Arnold*, his heirs and assigns forever, one certain piece of land lying in said *Durham*, being part of the real estate of said deceased, containing one acre, being 38¾ rods in length, and 4 rods and 2 feet and 3 inches in width ; bounded, &c. *together with a liberty of plowing or digging in the land of said deceased, and thereby turning into said Arnold's land, one half of a small brook which runs across the highway, which is at the east end of said land* : To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said *James Arnold*, &c. By this deed, the grantor, for himself, his heirs, &c. covenanted with *Arnold*, his heirs, &c. that *John Talcott*, at his decease, was seised of the premises in fee, that he had good right so to bargain and sell the same, and that the same were free from all incumbrances, &c.

It was admitted on the trial, that *Hezekiah Talcott* was

Vol. V.　　　　　　　　M

one of the heirs at law of *John Talcott*, deceased, and that subsequent to the execution of his deed to *Arnold*, above recited, the land mentioned in the declaration as belonging to the defendant, and through which the plaintiff claimed the right of conveying the water to his own land, was distributed to *Hezekiah* as part of the real estate of the deceased ; and that afterwards, *Hezekiah*, by his deed, containing the usual covenants of warranty and seisin, conveyed the same land of his brother *Daniel Talcott*, also one of the heirs at law of *John Talcott ;* and that *David Talcott*, the father of the defendant, died seised thereof.   It was proved, that *Thomas Lyman*, administrator of the estate of *David Talcott*, by his deed, dated the 26th day of *March*, 1788, under authority of a decree of the court of probate for the district of *Middletown*, granted the same land to the defendant.

The deed from *Hezekiah Talcott* to *David Talcott*, contained no reservation of the special privilege relating to the use of the water, as set forth in this deed to *Arnold ;* and in the deed from *Lyman* to the defendant, no mention was made of such privilege.   The court in their charge, instructed the jury, so far as respected the right of the plaintiff to the special privilege derived from *Hezekiah Talcott's* deed to *Arnold*, that the defendant was estopped to deny the right of *Hezekiah* to convey such special privilege in the manner expressed in his deed.   The jury, thereupon, returned a verdict for the plaintiff ; and the defendant moved for a new trial, on the ground of a misdirection ; which motion was reserved for the opinion of the nine Judges.

*Daggett*, in support of the motion, contended,

1. That the defendant is not estopped to deny the right of *Hezekiah Talcott* to grant the special privilege claimed by the plaintiff.   The defendant holds the land by purchase, and not by descent ; and it does not vary the case, that he stood in a relation by which he might have taken the estate as heir.   4 *Com. Dig. tit. Estoppel. C. P.* 80. *Syms'* case, 8 *Co.* 53. *b.* 54. *a.   Goodtitle* v. *Morse*, 3 *Term Rep.* 371.

2. *Hezekiah Talcott*, in granting the special privilege to *Arnold*, acted without authority.   His powers were merely

those of an administrator; he was authorized to sell, but he certainly would not grant any special privilege out of the lands of the intestate. He acted as a trustee for the other persons; and his declarations could neither bind purchasers, nor the heirs of *John Talcott.* We ought, therefore, to have been permitted to controvert the right of *Hezekiah Talcott* to convey the special privilege claimed by the plaintiff. *Tappenden* v. *Burgess,* 4 *East,* 230. *Fairtitle* v. *Gilbert,* 2 *Term Rep.* 169.

*Hosmer* and *E. Huntington,* contra, insisted that by the law relating to *Estoppels,* the defendant was bound by the act of *Hezekiah Talcott.* They cited 2 *Black. Com.* 295. 3 *Black. Com.* 308. 4 *Com.Dig.* 74, 77. *tit. Estoppel.* (C.) *Co. Litt.* 352. *a.* *Shelly* v. *Wright, Willes,* 9. *Rawlyn's* case, 4 *Co.* 53. *Isham* v. *Morrice, Cro. Car.* 109. *Trevivan* v. *Lawrence et al.* 6 *Mod.* 256. S. C. 1 *Salk.* 276. S. C. 2 Ld. *Raym.* 1048.

TRUMBULL, J. *John Talcott* died seised in fee of the land now owned by the plaintiff, and also of another piece of land adjoining, through which run a small brook of water. His personal estate proved insufficient to pay all his debts. *Hezekiah Talcott,* one of his sons and heirs, took administration, and obtained from the General Assembly a power to sell so much of the real estate of said *John,* as would pay and satisfy the deficiency. In pursuance of that power, he sold to *James Arnold* in fee, by deed of bargain and sale, the land now owned by the plaintiff, together with a liberty of plowing or digging in said other piece of land, and thereby turning into said *Arnold's* land one half of said brook; and for himself, his heirs, &c. covenanted with the said *Arnold,* his heirs and assigns, that he had good right so to bargain and sell the premises, and that the same were free from all incumbrances whatever.

In the settlement of the estate, the said other piece of land was distributed and set off to said *Hezekiah,* as one of the heirs of said deceased. *Hezekiah* afterwards conveyed it to *David Talcott* in fee, without any reservation in the deed of the privilege in said brook to *Arnold,* and his assigns. The

June, 1811.

Coe
v.
Talcott.

title acquired by *Arnold*, is legally vested in the plaintiff, and the title of *David* in the defendant.

On the trial of the cause, the court instructed and charged the jury, that the defendant was estopped to deny the right of *Hezekiah* to convey the said special privilege, in the manner set up in said deed.

The plaintiff obtained a verdict and judgment. The defendant now moves for a new trial, on the ground, that said charge is erroneous.

*Hezekiah Talcott*, at the time when he executed the deed to *Arnold*, had not a right to grant this privilege. A power given to sell lands, carries with it no authority to carve out a privilege, or create an easement, upon any lands not sold by the trustee. The deed did not, of itself, convey the privilege ; it only gave to *Arnold* a right of action against *Hezekiah* and his heirs, on the warranty.

A trustee acting within his powers, does not render himself liable on his contracts and conveyances ; but whenever he exceeds his powers, and undertakes to transfer and convey without authority, he becomes personally answerable to the grantee on his covenants. The land now owned by the defendant, in which this privilege of digging a channel and drawing off one half of the brook, is granted and warranted, by the deed, was afterwards distributed in fee to said *Hezekiah*, the grantor, towards his proportion, as one of the heirs of the estate of said *John Talcott*, deceased.

By the clearest principles of law, from the moment that he became vested, in this manner, with the title of this land in fee, *Hezekiah* and his heirs were forever estopped from denying his right to grant and convey the said privilege, in manner and form, as contained in said deed to *Arnold*. But a question is made, whether the defendant, who claims as purchaser of *David's* title, and privy in estate only, is estopped also, by reason of the estoppel of *David* and his heirs, under whom he claims ? I think it is equally clear, that he is estopped ; that this estoppel runs with the land ; and that he can claim no other or better title, or more beneficial interest, than what his grantor had in the land ; and by consequence, he had power to convey.

In *Sir W. Jones' Rep.* 459. it is holden, " that estoppels in *fait*, and by record by fine or recovery, shall bind not only the party to the estoppel, but also all privies who claim under him." In *Trevivan* v. *Lawrence & al.* 6 *Mod. Rep.* 256. *Holt*, C. J. in delivering the opinion of the court, lays down the principle, " that if a man make a lease, by indenture, of land which is not his, and after purchase it, the lease shall bind him, his heirs and assigns, and an estoppel that affects the interest of the land, shall run with it, to whosoever takes it." The same case is also reported in 2 *Ld. Raym.*1036. and 1048. and in 1 *Salk.* 276. and the same principles agreed to, by the whole court. The authority of these cases is admitted in the case of *Goodtitle* v. *Morse*, 3 *Term Rep.* 365. In that case, the estoppel claimed was not created by deed or warranty, but by surrender of a copyhold estate by an heir at law, in the life time of his ancestor. And although Lord *Kenyon* expressed some doubt, what the case would be with respect to freehold estates, and thought that all the cases relative to estoppels were not easily to be reconciled, his doubts arose merely from the rule in *Litt. s.* 446. *p.* 265. that a bare release of all right, by the heir in the life time of the ancestor, creates no estoppel, because the heir had no right at the time of the release ; and from the comment on it by *Coke*, who notes a diversity between a release, a feoffment and a warranty, as to their effect in creating a bar or an estoppel. None of these doubts affect the present question.

Lord *Coke*, in his commentary on *Littleton, s.* 667. *p.* 352. lays down the rule, that " Privies in blood, as the heir ; privies in estate, as the feoffe, lessee, &c. ; privies in law, as the lords by escheat ; tenant by curtesy ; tenant in dower ; the incumbent of a benefice ; and others that come under by act in law, or in the *post*, shall be bound, and take advantage of estoppels." I hold this rule to be good law, and conclusive in the present case.

I am therefore of opinion, that the charge to the jury was right, and that no new trial ought to be advised.

The other Judges severally concurred in this opinion.

New trial not to be granted.