Tilghman C. J.
This case depends upon the construction of a deed from William Gass, and wife to James McWilliams, -deceased, father of the plaintiffs. Gass was grandfather of the plaintiffs; being the father of their mother, Mary, (the *512 wife of the said James M-Williams,) who was his only child.' ' The deed being in consideration, as well of the natural love and affection which the grantors bore to their son-in-law, as of five shillings lawful money, may well operate as a deed of bargain and sale, by which the legal estate in fee simple, may be vested in the grantee. But .although a fee simple was conveyed, yet it was subject to certain restrictions, as to the power of alienation; that is to say: the said M-Williams was not to sell the estate in the life-time of the said Gass, unless Gass sold the land on which he himself then lived: but if M-Williams should die, living Gass, and before Gass had sold the land on which he lived, in such case he was to leave the estate to his wife Mary, (the daughter of Gass,) or to the lawful issue of her body. On the contrary, if Gass should sell the land on which he lived, during the life of McWilliams, or if he should die, and M-Williams survive him-, in either of those cases, McWilliams was to have “free liberty cc to bequeath, or sell and convey the estate as she .chose” It turned out, that Gass sold about a hundred and sixty-eight acres (out of about 444 acres) of the land upon which he lived, during the life of McWilliams, but retained his dwelling house, and the remainder of his land; after which McWilliams, during the life of Gass, sold to the defendants, or those under whom they claim, the whole of the estate conveyed to him by Gass, amounting to about ISO acres. Afterwards Gass died, and McWilliams survived him. It cannot be denied, that the wife and children of McWilliams took some contingent interest, by the deed of Gass: although what it was, is not clearly defined ; the expressions being, that, on a certain event, McWilliams was to leave the land to his wifi or her lawful issue. Much research and ingenuity haye been exerted by the plaintiff’s counsel, in shewing the different manners in which the interest of the wife and children might be secured to them by operation of law, on this deed. In conveyances to uses, where the legal estate is transferred to the use, by virtue of the statute of uses, a grantor may do many things which it -would be difficult to effect by common law conveyance ; and the Courts will do every thing in their power, to support the intent of the grantor, even by making the deed operate as a kind of conveyance which was not intended: the estate intended to be conveyed being the main thing, and the conveyance only the instrument by which the *513 transfer is- effected. It is necessary, that some person should be seised of the legal estate in fee, and then the uses being declared, the legal estate passes over, and becomes united to the use, so that the cestui que use is vested with the legal estate. These uses need not all take effect at the moment of making the deed, but may spring up, from time to time, upon such contingencies as are thought proper: provided always, that nothing in the nature of perpetuity can be established. In the present case, the legal estate being conveyed to James M'-Williams, who accepted it on the terms mentioned in the deed, such acceptance may be construed as a covenant by him, to stand seised, to such uses as appear to be intended in favour of his wife and children. We must inquire then, what was intended in favour of the wife and children, whether such intent was lawful, and whether the events have happened on which their interest was to arise. It was intended, in the first place, that James M'-Williams should not sell during the life of Gass, unless Gass had previously sold his own land. The defendants contend, that this restriction was unlawful, being incompatible with the nature of an estate in fee simple ; and that, even if it were lawful, it was removed, by the sale of part of Gass’s land.' Where an estate is given, and afterwards a restriction imposed, destructive of that estate, the restriction is void. Therefore, if, after giving a fee, a general and’ perpetual restriction of alienation were added, the restriction would be void. But if the restriction is partial, such as of aliening to a particular person, it would be good; because this is not inconsistent with a reasonable enjoyment of the fee. So, I take it, if the restriction-was of alienation, during a particular time, as is proved by the decision in Largis’s case, 1 Leon. 82, which has been cited and recognised in the books of abridgment, and elementary authors of good authority down to the prepent day, and I have no doubt, is law. For what length of time this general restriction may endure, it is not necessary to decide, nor shall I attempt to trace the boundary. Suffice it to say, and I think it may be said, with great safety, that it may last-, during the life of any person in existence at the time of making the deed. That is enough for the present purpose; for there is no restraint in this deed, beyond the life of James M'-Williams. Whether the restriction ceased as soon as Gass sold part of his land, is a point, not void of difficulty; but I *514 shall give no opinion on it, as the case may be decided on clearer and better ground. Let us go on then to investigate t]le extent cf the deed. The only case ' in which any provision was intended in favour of M'-Williams's wife and children, was, that of his dying in the life of Gass, and before Gass had sold his own land; but the instant Gass sold, or died, all idea of provision vanished, and the estate of M'-Williams was to be absolute and uncontrouled. This is the clear intent of the deed. So that under the events that have taken place, if the wife or children of-M'-Williams retained any interest, it was contrary to their grandfather’s design. This is so manifest, that the plaintiff’s counsel were reduced to difficulties in the argument. After producing many authorities to show, that in deeds operating by way of use, the Court would strain to support the intent of the grantor, they were reduced to the necessity of turning short about, and construing this deed so far as respected M'-Williams’s interest with the severity of a common law conveyance. Sometimes they supposed that there; was a condition subsequent, which forfeited the estate of M'-Williams, as soon as he executed a conveyance of any part of his estate. They then were for tying him down to the’rigid execution of a power; assuming that he had nothing more than a power to sell on certain contingencies, which had not happened. But there is nothing-like a condition in this case; because an entry for a condition broken would have defeated the interest of the wife and children, which it was the object of the restriction to protect. There is more i'eaáon in saying that there was a conditional limitation. But that would not answer the plaintiff’s purpose, because the limitation would not take effect; M'-Williams having survived Gass, and there being nothing in the deed, which shews an intent, in any event, to deprive M'-Williams of the estate, and give it to his wife and children during his ozun life. Finally, the objection to the defendant’s title is reduced to this, that at the time of the execution of M'Williams’s deeds, he had no power to sell. This is true, and if under the events which have taken place, any use could arise to the plaintiffs, under their grandfather’s deed, they Ought, certainly, to recover. • But as there is no such use, their title, now, must be derived from and under their father, fames M'-Williams, as his heirs, and not paramount to him.
The case then will stand thus : — fames M'-Williams sells *515 and conveys land,, to which he has no title, hut afterwards acquires title. Can his heirs recover against his grantees ? It appears to me, that in such casé, they would be estopped by their father’s deed, from denying his title : and if there J , J ° - n were occasion for further assurance, equity would compel them to make-it. If the interest of James McWilliams had extended no farther than a power to sell on certain conditions, with an interest limited-to his children, in case he did not execute the power, then indeed, a non-execution, or even-a defective execution, would not be aided, because the children having as much equity as the purchasers under their father, the Court would not interfere. But I consider the father, after the death of the grandfather, as enjoining an unlimited estate, to which the doctrine of powers would not be' applicable. It is objected, that a person who makes a voidable deed, (as an infant,) cannot be compelled to confirm it afterwards, although he has absolute power over the estate. But these cases are very distinguishable. The deed of an infant is voidable, because the’ law supposes him to be of insufficient understanding to make the contract, and this presumption cannot be contradicted. It remains, therefore, in as full force, when the infant arrives at age as ever. The fact still is, that the deed was made by a person of insufficient understanding, and therefore there is no ground for insisting on a confirmation of it. But in the case before us, there was no personal incapacity, nor any reason why the conveyance of McWilliams were not good, except that they were- contrary to the provisions which the deed of William Gass contained, for the wife apd children of McWilliams. But now that events have happened, which have defeated that intended provision, and according to the intent of William Gass, all restraint on McWilliams was to.be removed, it can make no difference as to Gass\y intent, whether the conveyances of McWilliams were executed, at one time or another. Suppose, that McWilliams., instead of conveying, had entered into articles, reciting the title under which he held, and covenanting to convey, in case subsequent events should make it lawful, there can be no doubt but that when -the course of events had removed the restrictions, he would be decreed to convey. And I do not think the case less strong, because instead of entering into articles, he made an absolute conveyanee. A ease ha's been cited, of a tenant in tail, who rove *516 nanted to suffer a common recovery, for a valuable consideration. A bill in equity was filed on this covenant, he was decreed to suffer a recovery, and committed for contempt in not performing the decree ; and died in imprisonment. The heir in tail took the land. The reason is plain, because the heir in tail claimed per formant doni, paramount the father who died in'imprisonment. And the law would be the same, if in the present case, the wife or children of M'-Williams had any interest in this land after their grandfather’s death. This is the turning point of the cause. It appears clearly to me, that they had no interest, and therefore M'-Williams would have been decreed to execute a conveyance, if a bill had been filed against him after the death of Gass. My opinion is, that the judgment should be affirmed.
Yeates J. was sick and absent.
Gibson J.
The plaintiffs must recover, if at all, either as heirs of William Gass, or as purchasers under the deed of the 9th May, 1775, or as the heirs of fames M'-Williams. The intention of Gass, at the time the deed was executed, seems to have been, that as long as he remained the owner of the mansion part of what originally formed the whole estate, no part of it should go out of the family. He also seems to-have resolved not to sell; so that the whole of his property or what remained unsold, (in case he changed his intention in part,) should be re-united in the family of M' Williams, and that in case M'-Williams died before him, a provision should at all events be secured to his wife and children. There was also a secondary and subservient intention to provide for M'-Williams and his wife, during his own life, or until he-should make a different disposition of his whole property inconsistent with the above arrangement,.in which case M'-Williams was to be the owner of the part granted him, absolutely. These objects, he appears manifestly frotn the provisions of this deed, to have had in view. I therefore do not think the plaintiffs can claim aright.of entry as the right heirs of Gass, for a condition broken. For to construe the restriction against alienation as a condition, the breach of which would work a forfeiture, would frustrate one of the essential objects of the grantor, to wit, to secure a provision for the plaintiffs themselves. It is unnecessary-to consider, whether as a con *517 dition, this restriction would be totally void as being against the policy of the common law, as it is very clear, that if the IS intention of the grantor cannot take effect under this instru-. ment as a conveyance at common law, it may as a conveyance to uses. M'-Williams stood seised under, this deed to his own use in fee, with a springing use to his wife in case she survived him, and if not, to her issue, limited to take effect on the contingency of M'-Williams dying in the lifetime of Gass, not having then sold the land he lived on at the execution of the deed. M'-Williams survived Gass. I therefore take it, the contingency never happened within the intent and meaning of the deed, on. which the use to the plaintiffs was to arise. I do not consider this as a conditional limitation of an use to the plaintiffs taking effect as soon as M'-Williams should do any act inconsistent with the nature of the estate granted to him; and if it were so, I do not consider the conveyances to the defendants as acts tending to defeat the interest of the plaintiffs. For, claiming under the deed, and being of course purchasers with notice, they would stand seised to the same uses whenever they should arise, that he did. The estate could not go over to the plaintiffs at the time, for they could not, at all events, take in the life-time of their father. I take it then, the plaintiffs cannot claim as purchasers under the deed, the contingency not having happened, upon which the use was to have shifted. If they recover, it must be as the heirs at law of M < Williams. At the time of the execution of the conveyances to the defendants, he had no power to execute any deed. Therefore the cases cited by the plaintiffs’ counsel, respecting a defective or non-execution of a power, which always suppose the existence of one at the time, do not apply. It is clear, also, that M'-Williams by surviving Gass, when all restriction became extinct, did not thereby acquire a naked power to sell, unconnected with his interest in the land. He became the absolute owner of the fee simple. It is by considering his conveyances in . the light of an execution of a power defective and void, that any difficulty is raised in the mind. Suppose that instead of conveyances executed, he had entered into articles with the defendants, to convey to them as soon as he should become the. absolute owner of the land, there cannot be a doubt, but that Chancery would decree a specific performance of the contract. So in equity a grantor convej ing land for which he *518 has no title at the time, shall be considered a trustee for the. grantee, in case, at any time afterwards, he should acquire title. Then shall not M'-Williams, or the plaintiffs in his stead, be so considered, they having no title under the deed from Gass but what they take as heirs of Williams, and that being the case Chancery would compel them to convey to the defendants. The judgment being in favour of the defendants, must be affirmed.
Judgment affirmed.