## Thomas Somes, Administrator of Nehemiah Somes, *versus* John Skinner.                    52

A grants land to B in fee with warranty, and then mortgages the same land to C, who has no notice of the former conveyance, and whose deed is recorded before B's. After B's deed is recorded, C assigns the mortgage to the demandant, who releases to A and at the same time takes back from him a new mortgage with warranty.  B dies, leaving A and the tenant his heirs, having been in possession during the time of all these conveyances.  *Held,* that the release to A did not give him an instantaneous seisin so as to enable him to reconvey an estate, but that it operated by estoppel a discharge of the first mortgage, leaving B an unincumbered fee ; but that when the land came to A and the tenant by descent, the demandant took A's moiety by estoppel by virtue of the second mortgage.

A deed creating an estoppel to a party who undertakes to convey by it land in which he has nothing at the time, but to which he afterwards acquires a title by descent or purchase, passes an interest and a title from the moment such estate comes to the grantor, not only against the grantor and those claiming under him, but also against strangers who come in after the estoppel.

Where the demandant in a writ of entry makes out his title to a part only of the land demanded, he shall have judgment for that part.[1]

Where a mortgagee recovered in a writ of entry against a stranger, the judgment rendered was conditional. See *St.* 1785, c. 22, § 1.

This was a writ of *entry sur disseisin*, in which the administrator of Nehemiah Somes demanded of John Skinner seisin of a tenement in Boston, counting upon the seisin of William S. Skinner on the 8th of January, 1811, and a conveyance by him on that day to the intestate in fee and in mortgage, and alleging a disseisin done by the tenant to the intestate.  The tenant pleaded *non disseisivit*, and on that plea issue was joined.

To prove the seisin of the intestate the demandant produced a deed of mortgage from W. S. S. to the intestate, dated

---

[1] Confirmed by Revised Stat. *c.* 101, § 11.

the 8th of January, 1811, and recorded in September, 1812, conditioned for the payment of 4000 dollars ; which condition had never been performed.

In defence the tenant produced a deed from his father, John Skinner, to W. S. S. in fee simple with warranty, dated in December, 1804, and recorded in April, 1805. Also a deed from W. S. S. to the same J. S., dated in March, 1805, and recorded in March, 1807. Also a deed of mortgage from W. S. S to Stephen Codman, (who had no notice of the deed last mentioned,) dated the 1st of July, 1805, and recorded on the 10th of the same month, to secure the sum of 4000 dollars, payable in three years from December 1804, with interest annually.

On the 8th of January, 1811, Codman, for the consideration of one dollar, made a deed of release and quitclaim to the intestate, " meaning thereby to assign all his right under the mortgage and possession taken under the same," and delivered over to him the deed of mortgage ; and on the same day the intestate, for the consideration of one dollar, executed and delivered a deed of release and quitclaim to W. S. S. and took from him the deed of mortgage first mentioned.

J. S. the father lived on the premises during all the conveyances, and until his death in 1813 ; after which his son the tenant moved on. J. S. the father left three sons, John the tenant, William S. before mentioned, and Richard who died unmarried and without issue in August, 1817.

The tenant contended, that in consequence of the quitclaim from the intestate to W. S. S., his father became seised by virtue of the deed to him of March, 1805.

The demandant contended, that the assignment from Codman to the intestate, the quitclaim from the intestate to W. S. S. and the mortgage from W. S. S. to the intestate, were all one transaction for the purpose of more conveniently securing the money lent by the intestate, and that in law the title was perfect in the intestate ; but that if this were not so, still the demandant was entitled to a moiety of the premises by reason of its having descended from J. S. the father to W. S. S.

A verdict was taken by consent for the demandant, which was to be confirmed in the whole, or to be altered so as to stand for

an undivided moiety, or to be set aside and the de.*andant to be nonsuited, according as the Court should determine the law.

The case was twice argued, first at March term 1823, and again at March term 1824.

*Prescott* and *G. Sullivan* for the demandant. As the mortgage to Codman was made before the deed to J. S. was recorded, Codman acquired a title, and his deed of release to the intestate must be construed to operate as a grant, it appearing by the recital in the deed, that Codman had taken possession for condition broken. *Pray* v. *Pierce*, 7 Mass. R. 281. The legal estate passed from Codman to the intestate and from him to W. S. S. and back to the intestate as mortgagee. [*Parker C. J.* Could the mortgager be the assignee of the mortgage? Would not the effect of the release to W. S. S. rather be to discharge the mortgage and restore efficacy to his deed to J. S.?] If W. S. S. had held the right in equity to redeem, that would have been the operation, but he had ceased to have any interest in the land. He was indeed liable on his covenants, but he could take a grant like any stranger.

The three deeds of the 8th of January, 1811, are to be considered as one conveyance. *Holbrook* v. *Finney*, 4 Mass. R. 566 ; *King* v. *King*, 7 Mass. R. 499. W. S. S. had but an instantaneous seisin, and the intestate continued to have all the title which had been in Codman. There is no evidence that the debt secured by the first mortgage has been paid. W. S. S. takes up one specialty and gives another, but this is no payment, and a court of equity would not thereupon decree a redemption of a mortgage.

The demandant is at least entitled to recover the moiety which has descended to W. S. S. The recording of the deed to the intestate is equivalent to livery of seisin ; *Pidge* v. *Tyler*, 4 Mass. R. 545 ; *Marshall* v. *Fiske*, 6 Mass. R. 30 ; *Pray* v. *Pierce*, 7 Mass. R. 382 ; and the deed also contains a warranty ; so that if the action were against W. S. S. or one claiming under him, it would not be denied that he was estopped to controvert the demandant's title. But an estoppel which works an interest in land runs with the land, and when the estate comes to the grantor the livery of seisin shall operate according to the right and enable the grantee to maintain his action against

Somes
v.
Skinner.

*March 5th,*
1823, *and*
*July 6th,*
1824.

54

a mere stranger. Co. Lit. 47 *b*, and note 307 ; ibid. 352 *b*, note 307 ; Com. Dig. *Estoppel, B ; Rawlyns' Case,* 4 Co. 53 ; *Palmer* v. *Ekins,* 2 Ld. Raym. 1551 ; *Trevivan* v. *Lawrence,* 6 Mod. 258 ; *S. C.* 1 Salk. 276 ; *Edwards* v. *Omellhallum,* March, 64, *pl.* 99 ; Vin. Abr. *Estoppel, (A. a) ; Jackson* v. *Matsdorf,* 11 Johns R. 97 ; *Adams* v. *Frothingham,* 3 Mass. R. 355, 362.

*W. Sullivan* and *Harrington* for the tenant. The demandant having declared on the seisin of W. S. S. in 1811, he is bound to prove it as alleged. The facts however show that W. S. S. was not seised, but that his father had seisin and possession, actual and legal. The recital in the deed from Codman is not evidence of possession taken by him ; and by his release to the intestate, neither of them being in possession and there being no privity between them, nothing passed. Shep. Touch. 321, 329 ; *Kite and Queinton's Case,* 4 Co. 25; *Blemmerhasset* v. *Humberstone,* Hut. 65 ; Co. Lit. 193 *b*, 273 *b* ; *Quarles* v. *Quarles,* 4 Mass. R. 688 ; *Porter* v. *Perkins,* 5 Mass. R. 236 ; *Warren* v. *Childs,* 11 Mass. R. 222 ; *Mayo* v. *Libby,* 12 Mass. R. 343. Although the word *assign* is used, yet the intention, which is to be gathered from the whole deed, was only to release ; otherwise a full consideration would have been expressed in the deed. We have no evidence that the bond was assigned, and it is to be presumed that it was paid ; and if the debt is extinguished, the mortgage, which is only an incident to the debt, is extinguished likewise. *Martin* v. *Mowlin,* 2 Burr. 978 ; *Jackson* v. *Willard,* 4 Johns. R. 41. If the deed from Codman had any effect, it was to discharge the mortgage, for where he to whom a release is made cannot take, it enures by way of extinguishment. Co. Lit. 279, 280 ; 1 Crui. Dig. 385. If then nothing passed from Codman to the intestate, nothing passed from the intestate to W. S. S. The three deeds of the 8th of January cannot be considered as one conveyance, for the design was not to keep alive the old debt, but to extinguish it and create a new one. The doctrine of estoppel does not apply, for the tenant does not claim under W. S. S. Co. Lit. 352 ; *Arthur* v. *Bokenham,* 11 Mod. 148 ; *Jackson* v. *Bull,* 1 Johns. Cas. 90, 91 ; *Edwards* v. *Rogers,* W. Jones, 460

PARKER C. J. delivered the opinion of the Court. [After stating the facts.] It appears from the foregoing recital, that on the 1st of July, 1805, Codman became seised in fee and in mortgage of the estate by virtue of the deed to him, the prior deed of W. S. S. to his father not having been registered until after that time, and Codman having no knowledge of the prior deed. But as the deed to J. S. the father was registered afterwards, and before any assignment of the mortgage by Codman, J. S. the father was seised of the equity of redemption of that mortgage. The deed of release and quitclaim of Codman to the intestate made for a valuable consideration, with the delivery over of the mortgage deed, operated as an assignment of the mortgage to him, so that on the execution of that release the intestate became seised of the legal estate, and the equity of redemption was in J. S. the father. Thus no estate whatever remained in W. S. S. and a discharge of the mortgage would vest an indefeasible estate in his father. But the intestate, on the 8th of January, 1811, made his deed of release to W. S. S., and a principal question is, whether any and what estate passed to W. S. S. by virtue of that deed. If, as contended by the counsel for the demandant, it passed the legal estate as a bargain and sale, or as an assignment to him of the mortgage, then his deed made on the same day to the intestate vested the estate in him, and he would be seised so as to support his action. If it amounted only to a discharge of Codman's mortgage, then the effect would be to relieve the title of J. S. the father from an incumbrance and he would be the lawful owner and the only person seised of the estate. We have labored much to come to the conclusion contended for by the demandant's counsel, as the equity of the case is clearly on that side, so far as we can judge from the conveyances, but we find ourselves met at every step by rules of law which our duty will not allow us to neglect. It is impossible to consider the deeds between the intestate and W. S. S. as conveying a momentary seisin to the latter and a restoration of the title to the former in the shape of a mortgage, because the release to W. S. S. conveyed no estate, he not being in possession nor having any title at the time, nor can it be considered as an assignment of the mortgage of Codman to him, for he, being the mortgager and having con-

Somes
*v.*
Skinner.

*July 11th,*
1825.

6

Scnes
Skinne
57

veyed the equity of redemption by he legal effect of his deed to his fath r, could not at the same time stand on the footing of a mortgagee with power to convey to the prejudice of his father ; so that the only effect which the release to him could have, was to discharge the mortgage, and then J. S. the father, who held the equity of redemption and was in possession, became the legal owner of the estate, and thus the intestate, by this blundering system of conveyancing, lost the benefit of his mortgage. We see no way of coming to a different conclusion.

But there is another branch of the case attended with equal difficulties. J. S. the father died in 1813 ; and W. S. S., who mortgaged to the intestate, and J. S. the tenant, together with R. S , who is dead, became his only heirs. The title to a moiety of the premises, R. S. having died without issue and unmarried, thus came to W. S. S., and by virtue of his deed and the operation of law his right in the estate would enure to the intestate by way of estoppel or rebutter, so that if this action were against W. S. S. or his heirs, or any person claiming by or through him, they would be estopped to deny the title of the demandant. J. S. the tenant is a stranger to the deed of his brother, and he is not privy in estate, his title to one moiety of the tenement being independent of him, and the question is, whether he is bound by the estoppel, so that he cannot be allowed to say that nothing passed by the deed of W. S. S. to the intestate, as to the other moiety in which he has no right. On this point we have made considerable research, but without gaining much light. The old books are obscure on the subject and somewhat contradictory. In 2 H. 6, 2, it is said that a stranger cannot say *riens passa per le fait*, but the court was divided ; and in 2 H. 4, 21 and 22, it is stated that a stranger shall not plead *non est factum*, but may plead *riens passa per le fait*, and this probably is the law. Certainly this has been the practice with us, for nothing is more common, than, in the trial of real actions or actions of trespass *quare clausum*, for one party to avoid the effect of a deed produced by the other, by showing that the grantor was not seised and so nothing passed by his deed. Whether this is confined to the case of the disseisin of the grantor, or is applicable to other cases of an ineffectual deed, may be doubted, but the party in possession

against whom a mere quitclaim is produced, may always avoid it by showing that the releasee was not in possession and so took nothing by the deed.[1]  In the case of a deed of bargain and sale it would seem that an adverse seisin would be required to defeat its operation, otherwise there seems to be no good reason why a stranger should question its operation.  For it would seem to be a strange doctrine, that one who held title by deed, unimpeachable by the grantor, his heirs, or any privies in estate, should not be able to maintain his title against a mere trespasser, or one who has no legal interest in the land ; but such is the law, provided a stranger may question his right on the ground that nothing passed by the deed because the grantor at the making of it had nothing in the land.

<em>Somes<br>v.<br>Skinner.</em>

There are some authorities which look as if this absurdity did not exist, but they are not so explicit as we could wish.  Thus it is stated in the marginal note to the case of *Trevivan* v. *Lawrence*, 1 Salk. 276, that where an estoppel works an *inter-terest in the land*, it runs with the land and is a title.  The authorities cited, however, do not fully bear out this position, only going to show that all parties, privies, &c., are bound by the estoppel, but in the case itself it is laid down by Lord *Holt*, tnat where an estoppel works *on the interest of the land* it runs with it into whose hands soever the land shall come, and that *an ejectment is maintainable on a mere estoppel*.  Unless this were intended to be restricted to ejectment against those who were parties or privies to the instrument creating the estoppel,

---

[1] This doctrine has been considerably qualified ; so that a deed or other instrument, though in form a mere release or quitclaim, will be so construed and applied as to pass an estate, when such was the intention, even where the releasee is out of possession.  *Russell* v. *Coffin*, 8 Pick. 151; *Pray* v. *Pierce*, 7 Mass. R. 381 ; *Reformed Dutch Church* v. *Veeder*, 4 Wendell, 496; Shep. Touch. 82, 83; *Roe* v. *Tranmer*, 2 Wils. 78; *Croade* v. *Ingraham*, 13 Pick. 35.  But see *Warren* v. *Childs*, 11 Mass. R. 225; *Swett* v. *Poor*, 11 Mass. R. 549; *Hamblet* v. *Francis*, 4 Mass. R 78, 79.  See also *Porter* v. *Perkins*, 5 Mass. R. 233 ; *Thatcher* v. *Cobb*, 5 Pick. 425; *Kennebeck Purchase* v. *Call*, 1 Mass. R. 483; *Bennett* v. *Irwin*, 3 Johns. R. 366.

In this State a deed of quitclaim and release, of the form in common use here, is sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale.  Revised Stat. *c.* 59, § 5.

A release or quitclaim deed in Connecticut is considered an original conveyance.  It is most commonly used however to convey the legal title to one who already has the equitable title.  *Dart* v. *Dart*, 7 Connect. R. 250.

here is authority for the present case, and there is nothing in the case cited suggesting such a qualification. And as Lord *Coke* lays down the principle, that not only parties and privies in estate, but all those who *come in in the post*, are bound by an estoppel, perhaps the above position of Lord *Holt*, that an ejectment may be maintained on an estoppel, is correct and general in its application. Co. Lit. 352 *b.*

And this should seem to be the ground of decision in the following case from 1 Rol. Abr. 868, *Estoppel, K, pl.* 3. A disseises B of land, and afterwards B suffers a common recovery in which the precipe is brought against B, and by the record the sheriff puts the recoveror in possession upon a writ of *habere facias seisinam :* then C, a stranger, enters upon A and disseises him, upon which the recoveror enters ; and his entry is lawful, for although B was not a good tenant to the precipe, still this is a good recovery by estoppel against B, his heirs and assigns, it being fee-simple land, and binds all except A, who was seised of the land at the time of the recovery, and therefore by consequence shall estop C, who claims not under A, but comes in, *after the recovery*, by disseisin. The principle of this case, if applied to the case before us, will warrant a decision in favor of the demandant for so much of the land as came to W. S. S. on the death of his father and brother Richard. The intestate had a title against W. S. S. his heirs and assigns by way of estoppel created by deed with warranty ; this title enured or operated upon the land at the moment the descent was cast on W. S. S. The tenant is a stranger to this title, and having entered upon the land claiming the whole and defending it by his plea of *non disseisivit*, he must yield to the intestate, who stands in the place of recoveror in the abovecited case, and the estoppel under which he claims shall bind the tenant, because as to the moiety of W. S. S. the tenant comes in after the estoppel and that by disseisin, because by his plea he defends on a title which he has not.

There are other cases which, though not directly in point seem to recognise the principle involved in these which have been cited. The general doctrine, that an estoppel which works upon real estate is not a mere conclusion but may pass an interest and constitute a title, is discussed at some length in

the case of *Weale* v. *Lower*, Pollexf. 66. It is there laid down by Lord Chief Justice *Hale*, and the position is sanctioned by all the judges called to his assistance, in regard to a fine, which when it was levied passed no interest because the estate on which it was to operate was contingent, "that the estate upon the happening of the contingency feeds this estoppel, and then the estate by estoppel becometh an estate in interest, and *shall be of the same effect* as if the contingency had happened before the fine levied." The doctrine thus laid down is recognised in 2 Cruise's Dig. 452, *tit.* 16, *Remainder, c.* 8, § 19, 20. The same doctrine is maintained in *Smith* v. *Stapleton*, Plowd. 134 ; *Rawlyns' Case*, 4 Co. 53, 54 ; Bac. Abr. *Leases, O ;* Com. Dig. *Estoppel, E,* 10 ; Co. Lit. 47 *b*, n. 307. The general principle to be deduced from all these authorities is, that an instrument which legally creates an estoppel to a party undertaking to convey real estate, he having nothing in the estate at the time of the conveyance but acquiring a title afterwards by descent or purchase, does in fact pass an interest and a title from the moment such estate comes to the grantor.[1]

60

---

[1] *Comstock* v. *Smith*, 13 Pick. 116; *Carver* v. *Astor*, 4 Peters, 83 *et seq.;* *Jackson* v. *Hoffman*, 9 Cowen, 271 ; *Sinclair* v. *Jackson*, 8 Cowen, 586; *Doe* v. *Oliver*, 10 Barn. & Cressw. 181 ; *Vicks* v. *Edwards*, 3 P. Wms. 372 ; *Fairbanks* v. *Williamson*, 7 Greenl. 100; *Allen* v. *Sayward*, 5 Greenl. 231 ; *Doe* v. *Martyn*, 8 Barn. & Cressw. 497 ; *Fairtitle* v. *Gilbert*, 2 T. R. 171; *Rees* v. *Lloyd*, Wightwick, 123 ; *Helps* v. *Hereford*, 2 Barn. & Ald. 242; *Denn* v *Cornell*, 3 Johns. Cas. 174 ; *Penrose* v. *Griffith*, 4 Binn. 231; *Garwood* v. *Dennis*, 4 Binn. 314; Fearne, (edit. 1820,) 365, *c.* 6, § 5 ; *Blight* v. *Rochester*, 7 Wheat. 535 ; *Langer* v. *Felton*, 1 Rawle, 141; *Hathorne* v. *Haines*, 1 Greenl. 247; *Stone* v. *Wyse*, 7 Connect. R. 214 ; *Douglass* v. *Scott*, 5 Ohio R. 194, *Bond* v. *Swearingen*, 1 Ohio R. 412; *Allen* v. *Parish*, 3 Ohio R. 116; *Fite* v. *Doe*, 1 Blackford, 131, *Coe* v. *Talcot*, 5 Day, 88; Stearns on Real Actions, (2nd edit.) 34, *et seq.*

So where a man having title to land, stands by and knowingly permits another to give a deed of it, without making his claim known, he is estopped from afterwards setting up his title. *Henderson* v. *Overton*, 2 Yerger, 394. So a person standing by and suffering another to build on his land, forfeits his claim to the land. *Tarrant* v. *Terry*, 1 Bay, 239.

But a *release* does not create an estoppel against a title subsequently acquired, either in the releasor or in those claiming under him. *Comstock* v. *Smith*, 13 Pick. 116; *Right* v. *Bucknell*, 2 Barn. & Adol. 278; *Jackson* v. *Winslow*, 9 Cowen, 18, 19 ; *Jackson* v. *Hubble*, 1 Cowen, 616. But see *Bensley* v. *Burdon*, 2 Sim. & Stu. 519 ; *Russell* v. *Coffin*, 8 Pick. 153. Neither does a covenant that a party has a good right to convey, create an *estoppel* against a subsequent title. *Allen* v *Sayward*, 5 Greenl. 227.

And if this be law, there cannot be any sound principle which should limit a title thus acquired to a claim by the grantor or his representatives. It would be but a feeble title which would not enable the holder to defend his possession against trespassers, or those who should attempt to disseise him after his title is established. Nor does the doctrine in any degree tend to set up or give validity to conveyances made in violation of the statutes against champerty, maintenance, or buying of pretended titles, which may be considered as part of our common law, for if they are avoided it is because the seisin was in other persons at the time of the conveyance holding adversely, and this known to the parties ; whereas, according to the doctrine maintained, it is only against those who have sold the land and received the equivalent, and those who claim under them, and against mere strangers who usurp the possession without right or title, that the principle is to be applied.

It has been the common understanding, that when one supposing he has a title, though in fact he has none, for a valuable consideration conveys land by deed with warranty, and afterwards purchases, his new title shall accrue to the benefit of his grantee. There are many cases which seem to be founded upon this principle. Thus in the case of *Terrett* v. *Taylor*, 9 Cranch, 43, it was held that a deed which did not operate by way of grant to convey a fee, yet having a general warranty binding the grantor and his heirs for ever, operated by way of estoppel to confirm a title, and the deed thus operating was set up against the defendants who were not parties nor privies, but came in in the post under another title. This tacitly admits the doctrine we are maintaining, for the action could not have been supported without such admission. And the case of *Mason* v. *Muncaster*, 9 Wheat. 454, was decided on the same principle. The same doctrine is recognised in several New York cases. Thus in *Jackson* v. *Matsdorf*, 11 Johns. R. 97, *Thompson* C. J. says a deed containing a warranty will pass any title subsequently acquired by the grantor. And the cases of *M'Crackin* v. *Wright*, 14 Johns. R. 194, and *M'Williams* v. *Nisly*, 2 Serg. & Rawle, 515, are of the same character. We have not found any decided cases which contradict these, unless the case of *Davis* v. *Hayden et al.*, 9 Mass. R. 519

should be so considered. The deed from John Davis to his brother Edward of one seventh part of the land demanded in the action, was held to convey nothing, because at the time of making it the grantor had nothing in the land, being only heir apparent.[1] The intention was to convey one seventh of what was supposed to be a vested remainder, Edward Davis the elder being in possession, having as was supposed a life estate only in the premises. The question of estoppel or rebutter was not presented in that case, nor does it appear by the state of facts reported that the deed of John to his brother Edward was with warranty ; which is an essential feature in the doctrine established by the other cases.

We have before adverted to a distinction between a deed of land of which there is not any adverse possession at the time, and one which is given when the grantor is actually disseised and this fact known to the grantee at the time. In the latter case, by the policy of the law and in virtue of ancient statutes, perhaps the deed would be wholly inoperative, both parties being transgressors in relation to such conveyance ;[2] but where the disseisin of the grantor is not known, which may be the case where the land granted is remote from the domicile of the parties, as no offence will have been committed, there seems to be no good reason why the contract between the parties should be defeated. And the history of our judicial proceedings will show that this distinction has been recognised, for there are numerous cases of grants by proprietors of land of which they were in fact disseised at the time of the grant ; and in order to remove the disseisin, actions were brought in the name of the proprietors and recoveries had, after which the grantee has entered under his grant and maintained his title without any

---

[1] If an heir apparent sells a reversion, in the lifetime of his father, at an undervalue, the court will not, in favor of such a purchaser, decree a specific performance of the covenant for further assurance. *Johnson* v. *Nott*, 1 Vern. 171. See also *Boynton* v. *Hubbard*, 7 Mass. R. 112.

[2] *Brinley* v. *Whiting*, 5 Pick. 348, *Cleverley* v. *Whitney*, 7 Pick. 36; *Swett* v. *Poor*, 11 Mass. R. 549; *Bowers* v. *Porter*, 4 Pick. 198; *Walcott* v. *Knight*, 5 Mass. R. 418; *Everenden* v. *Beaumont*, 7 Mass. R. 78; *Prescott* v. *Heard*, 10 Mass. R. 60; *Patridge* v. *Strange*, 1 Plowd. 88 *a;* Co. Lit. 214 *a; Williams* v. *Jackson*, 5 Johns. R. 489; *Stoever* v. *Whitman*, 6 Binn. 420 ; *Aldridge* v. *Kincaid*, 2 Lettell, 393; *Warren* v. *Fields*, 11 Mass. R. 225 ; 4 Kent's Comm

question in relation to subsequent disseisors ; from which i
is to be inferred that none but those who were in possession at
the time when the grant was made, can avail themselves of the
want of seisin of the grantor at the execution of the deed.[1]

In the case before us there is nothing which would implicate
the grantee in the offence of buying pretended titles.  At the
time of the execution of the deed by W. S. S. to Somes the
intestate, it was believed that this was a proper form of convey-
ance to carry into effect a contract, which to all appearance
was just and fair.  Until then the legal title was in Codman,
as mortgagee, and the whole sum due on the mortgage was paid
by the intestate, who, if he had rested on his deed from Cod-
man, would have had an indisputable title to the whole of the
tenement as security for his money.  The mode unfortunately
adopted let in J. S. the father under his deed, which had been
legally supplanted by Codman's deed, so that it was only by
this blunder J. S. the father could claim any thing ; and indeed
he never seems to have asserted any claim during his life, living
it is true on the premises, as did W. S. S., and probably well
knowing the claim which Codman had as mortgagee.  Justice
requires that whatever came to W. S. S. through his father
should now be enjoyed by Somes, and we are satisfied that the
law will support this claim.

It was objected at the argument, that though this be the law,
yet. that under the declaration in which the demandant has
counted upon an entire seisin of the whole estate, a judgment
cannot be rendered for an undivided moiety.  This objection
appeared formidable when first stated, but having since had oc-
casion to consider this question very deliberately in the case o'
*Dewey* v. *Brown*, 2 Pick. 387, we came to the conclusion,
upon very satisfactory principles, that the objection has no
validity.[2]

63      According to the agreement of the parties therefore in this
case, the verdict is to be so altered as that the demandant shall
recover seisin and possession of one undivided moiety of the

---

[1] *Swett* v. *Poor*, 11 Mass. R. 554.

[2] Stearns on Real Actions, (2nd edit.) 219 ; *Inglis* v. *Sailors' Snug Harbor*,
3 Peters, 134, 187, 189; *Clanrickard* v. *Sidney*, Hob. 272, 282 ; *Holyoke* v.
*Haskins*, 9 Pick. 264 ; Revised Stat. *c.* 101, § 11.

prem:ses described in the writ ; and the judgment will be con-  Somes
ditional, as in an action upon a mortgage.[1]

---

[1] 1 Powell on Mortg. (Rand's edit.) 262 *a*, note; 2 id. 499 *a ;* Revised Stat. c. 107, § 3, 4, 5, 6.