Tilghman C. J.
The plaintiff claimed under a warrant for 400 acres in the year 1763 to James Caldwell including his improvement. The defendant claimed [under a warrant to George Woods, 28th August 1776, for 300 acres including James and William Clark’s improvement begun in the year *1761. On the warrant and survey of the plaintiff a patent was issued to [Richard Neave and [Richard Neave junior, 10th November 1789. On the warrant and survey of the defendant, a patent was issued to George Woods, 13th April 1785. Lienee it appears, that the title of the defendant, derived from an impi’ovement made in the year 1761, was the oldest.. One question on the trial wTas a matter of fact, viz. whether the land in controversy was included in the patent to George Woods. If it was, there was an end of the cause. But other questions likewise arose; because although the defendant could not make out a title, that defect would not enable the plaintiff to recover. His recovery must be founded on *216 his own title. If the patent of "Woods did not include the land, it would be necessary to inquire whether it was included in the patent of the plaintiff. This also was a matter of fact. But besides this there was a question of law. Supposing the land to be included in the patent to the Neaves, had the plaintiff shown a legal transfer of the right of James Caldwell ?
The plaintiff contended that he had shown title regularly deduced from Caldwell to the Neaves, because the patent contained a recital of various deeds making a complete chain of title. No doubt those recitals are evidence against the commonwealth. But are they evidence against the defendant? That is the question. The rule of law is, that a deed containing a recital of another deed, is evidence of the recited deed, against the grantor and all persons claiming by title derived from him subsequently. What is the reason of this rule? It is this, the recital amounts to a confession of the party, and that confession is evidence against himself and those who stand in his place. But such confession can be no evidence against a stranger. It can be no evidence against one who claims by title derived from the person making the confession, before the confession made, because he does not stand in the place of the person making the confession ; he claims paramount the confession. One who has conveyed his right, can by no subsequent confession affect the right which he has conveyed. Nor can any confession by him, alter the general rule of evidence with respect to the person to whom he has conveyed. Then in order to make the recitals in Neave’s patent evidence against the defendant, it was ineumbent on the plaintiff'*to bring his case within the exception to the general rule of evidence, by showing, that defendant claimed under the commonwealth by title derived after the date of the patent. Did the plaintiff show this? He did not; there was no evidence showing anything like it. On the contrary, the evidence showed a claim on the part of the defendant, prior to the patent of the Neaves. It has been urged on the part of the plaintiff that the recitals in Neave’s patent are evidence against the defendant, because the titles of the plaintiff and defendant are distinct. What right, says he, has the defendant to complain, if the commonwealth think proper to confess the chain of title from Caldwell to the Neaves? Undoubtedly he has no right to complain of this. But he has great right to complain, if the commonwealth insist on the right of making their confessions binding on him; and in this consists the fallacy of the argument. The right of the commonwealth to bind itself., is *217 converted into a right to bind the defendant. But it is said, that it will have bad consequences, if persons seating themselves on land supposed to be vacant, can call on those who have obtained patents half a century ago, to produce all the intermediate conveyances between the warrant and the patent; because it is well known, that after patent obtained, people have been careless of the prior conveyances, many of which were never recorded and have been lost. This mischief however will not ensue; because a person who seats himself on what he supposes to be vacant land, intending to acquire a title by settlement, derives his title under the commonwealth, from the time of his entry for the purpose of settlement, and therefore with respect to him, the recitals in the patent will be evidence. Besides, after great length of time, conveyances from the original warrantee will be presumed in favor of a patent attended with possession. Indeed I will not say whether after long possession a recital in the patent may not be evidence. But there has been no such possession in this case. On the whole, I am of opinion, that the recitals in Neave’s patent, were not evidence against the defendant, and that the judgment of the Court of Common Pleas should be affirmed.
Ybates J.
It has been contended by the plaintiff’s counsel in his case, that the charge delivered to the jury by the '^President of the Court of Common Pleas was erroneous in point of law.
It becomes absolutely necessary to keep in mind the dates of the several transactions, to form our judgment on the subject. James Caldwell’s warrant, under which the plaintiff claims, was dated in 1763, and a survey made thereon the same year. A resurvey was afterwards made in 1776, and a patent issued thereon to Richard Neave and Richard Neave junior, on the 10th November 1789.
The.warrant to George Woods, under which the defendant claims, was dated in 1776, and a survey was made thereon the same year on the day upon which the resurvey was made on Caldwell’s warrant; and the patent was issued to Woods in 1785, four years and seven months prior to the patent granted to the Neaves.
This latter patent recited seven different mesne conveyances of the warrant; viz., from Caldwell to George Croghan;— from Croghan to Robert Callender;—from Callender to John Baynton, Samuel Wharton, and John Hughes;—from Hughes to the said Baynton and Wharton;—from Baynton and *218 Wharton to Cornelius Barnes;—from Barnes to Baynton, Wharton, and Morgan;—and from them to the said Neaves.
Upon this state of facts, the court declared the law to the jury, that a plaintiff in ejectment must recover on the strength of his own title; that the recitals in the patent were not legal evidence against the defendant, who claimed under a previous title adverse thereto, and that the mesne conveyances themselves should have been produced on the trial.
The dispute chiefly respected the lands at the head of a spring. It appeared in evidence, that the survey made on the ground under Wood’s warrant included those lands; but the plaintiff insisted, that this survey which was so made as to include 344 acres, was reduced in its return to 327 acres, throwing out the lands in question, upon which the patent afterward issued. On the other hand, it was contended, that it never was the intention of Woods to exclude the head of the spring, though it was admitted that some mistake had been committed in the return ; and that if the strict courses and distances returned on the warrants were to regulate the pretensions of the parties, the plaintiff must fail in his *reeovei7 inasmuch as the course N. 7° W. 198. perches, called for in his return and excluded the land, and the defendant might rely on his bare possession, unless a good title was shown against him. Woods claimed possession under a convejmnce of an improvement right made to him by William Clark in 1773.
It is not denied by the plaintiff’s counsel, that according to the English cases, recitals in a deed are evidence against the grantors and their heirs and those claiming under them by subsequent conveyances, but not against the persons holding under them by prior rights. But it has been urged that the correct rule as applied to patents, must be confined to cases where the contending parties claim under the same patent, and that the point has not been decided otherwise in our courts. At all events, it is said, local usage and practice will control the general rule; and a remark which I made this term in delivering my opinion in Correy’s Lessee v. Caxton et al. has been quoted, that the assignment of the interest by the person in whose name the warrant issued, is usually thrown aside, like the useless scaffolding of a building after it is completed.
I know of no usage or practice in the land office which has altered the established rule of evidence on this subject. I also well know that the decisions of the different members of this Court have recognized the English cases to their full extent on this subject. In Bonnett’s Lessee v. Devebaugh, *219 3 Binn. 175, 179, 190, heard here last term upon an appeal, it was held, that though a recital in a warrant of acceptance, that a survey had been made in the year 1755 by a deputy surveyor, by virtue of an order from the late proprietaries, and a patent issued thereon, was binding on the then lords of the soil, yet it was no evidence against a third person claiming to hold the premises by a previous actual settlement. Thomas Croyle, under whom the defendants held, made no pretensions to the land under this warrant of acceptance or patent, but claimed adversely thereto aliunde. If the recital in this warrant of acceptance could legally have been used to show the order of survey, there could have been no necessity of recurring to the deposition of William Lyon to prove that fact under the singular circumstances of the case. In the language of Judge Brackenridge, 3 Binn. 190-1 “such *recital would be evidence against the proprietary, as laid down by the Chief Justice; but would not affect a third person claiming adversely to the survey, and denying the existence of instructions or writing to that effect preceding the survey. It must be shown that such instructions did precede the survey, by the instructions themselves, or by proof of their existence by those who had read and knew the contents.” Such has been the uniform practice in the courts of this state; and when I compared the assignment of a warrantee (who is very frequently the trustee for the use of the person whose money was advanced to obtain the right) to the useless scaffolding of a building when completed, I must be supposed to confine the remark to such titles, as could safely stand on the foundation of the patents, without extrinsic props or supports.
Independently of precedents, the doctrine I have stated rests on principle. The rules of evidence are founded in the soundest policy and reason, and are wisely accommodated to the transactions of mankind. They pervade all classes of the community, and are equally applicable to the commonwealth, the late proprietaries, and each individual citizen. The oral or written assertions of any man may be received in evidence against himself and his heirs, and all persons claiming under them ; because each of them stands precisely in the same situation, and represents him. But when third persons set up an adverse title to such heirs or claimants, derived from some previous grant or contract made by the original party, or some act done by themselves, their interests cease to be the same; and such party cannot by his declarations invalidate their conflicting claim. The insertion in a deed, that A with whom the first contract was made, *220 had sold the lands contracted for to B, and B to C, &c., cannot be received to divest A or B of their interests. It is res inter alios acta, and must be proved by the best evidence in the power of the party. Every plaintiff in ejectment must show each distinct link of his chain of title, or must account for his non-production of it, before he can offer evidence of an inferior nature.
In this instance, the original survey made for Woods, comprehended the lands in question in 1776, which preceded the plaintiff’s patent above thirteen years. Whether *"Woods afterwards agreed to relinquish those lands, was a matter of fact, which was fairly submitted to the jury, upon the testimony offered on both sides. The defendant claimed adversely to the plaintiff’s patent, and in my idea had a right to insist that the different transfers of the warrant of Oaldwell should be proved in the common and usual mode, and not by the recitals in the patent. Recitals appear to me to be evidence only in cases where it is manifest that the party against whom they are used, claims under the grantor either by descent or purchase, subsequent to the execution of the reciting deed; and that the judges must necessarily judge of that point, when they declare the legal operation of the deed to the jury. But here the warrant of Woods calls for an improvement made in 1761, which overreaches the date of the plaintiff’s warrant.
I see no error in the charge of the court to the jury, and on the whole matter I am of opinion that the judgment of the Court of Common Pleas should be affirmed.
Bkackenridge J.
The rule that a recital in a deed is not evidence of the deed recited, is acknowledged. But does it apply where the deed recited is immaterial, and might as well not be recited at all ? In this case there is nothing more than that A, who had agreed to convey to B, acknowledges it, and says that at B’s instance he conveys to C. Who has any right but B to question this, and to say, it is not at my instance that you convey to C?
It is B, or a person claiming under him, that has a right to question the consent of B to give the title to C, and to call for the evidence of it. In the ease before us the proprietary is A, Caldwell is B, and the plaintiff’ Penrose is C. The proprietary by his warrant and survey, had agreed to grant to Caldwell. The warrant and survey are evidence of this; and being but an equity, the deed (the patent) is yet behind. It is given to Penrose, (C) reciting that it is on the assignment of B, and that A has had evidence of this. The deed *221 (patent) being made to him (0), is evidence that he had satisfied the proprietary that he stood in the shoes of B, and had a right to claim the equity of B. Who could question this but B, or those claiming under him, and alleging that he had passed this equity to them by an assignment overreaching that •^recited in the patent; which, as the priority of the comes in must then be shown. Here is the fallacy of the argument, the considering it the case of persons claiming under the same vendor. But it will be said that they do claim under the same vendor, the proprietary. But from him the title separated to'Caldwell and Woods. The defendant claims under Woods; the plaintiff under Caldwell. Were the question whether to Caldwell or Woods did the proprietary first agree to convey, the recital of an agreement to Caldwell would not be evidence. But this is not the case. The warrant and survey to Caldwell are shown, and the interest is in him, and whether in him or Woods first is not the question, and cannot come into view; for the defendant claims paramount. The legal and equitable title must be taken together. Enough is shown to satisfy that the equity is in C, (Penrose) where the legal title is. These recitals are of the chain, since the interest was in Caldwell; and whether by equity or legal title, makes no difference.
If a location, warrant, &c., to A, is shown, but returned for B, or if the surveying fees are paid by B, this is evidence of interest in B; and it is A alone, or those claiming under him, that can question it. When the location or warrant is to A, and the return for him, but the patent to B, why shall not this be evidence of interest in B, so that none but B or those claiming under him should question it. It has always been so considered, so far as my knowledge goes. The patent has been held prima facie evidence of title, and on principle I cannot see why it ought not to be so. Eecitals out of the question which are immaterial, it is sufficient to show that the equitable title which has been shown in him under whom the plaintiff claims, comes now to be vested in him to whom the deed of confirmation is given.
It is the same thing where the assignment is by devise. A having in him an equitable interest, devises to B who obtains the legal title. Can it lie with any one but the heir at law to call for the will recited in the deed conveying the legal title ? In an action of trespass, could any one else traverse the devise? Would it not be a departure, and pleading irrelevant matter ? And all proof is according to the order of pleading; for the science is founded on moral rea *222 Bon. Plaintiff shows the testator’s equity, and the legal *11 *from him who had agreed to convey it to the testator. Could the defendant bring this right to the equitable title in issue, unless by first showing an interest in that equity to himself paramount to the devise ?
In the case before us, whether the title that Caldwell had to this land is better than that of Woods, was the matter to be tried; and the plaintiff, after showing himself to be Caldwell, of which the patent to him on the same right is evidence, goes on to show that Caldwell had a right to this land by the survey. But a warrant and survey are also shown on the part of the defendant; and allowing the defendant’s survey to take preference, the question will be, is the ground within his survey ? It is the boundary line between the two surveys which has been laid down only on paper. It was a matter of fact for the jury; and the plaintiff ought not to have been thrown out on the point of law, the not showing his assignment from Caldwell recited in his patent.
Judgment affirmed.
[Approved in 2 S. & R. 351; explained in 2 S. & R. 456 ; and cited post 332 and in 2 S. & R. 382; 4 id. 175, 352 ; 13 id. 359 ; 2 W. 482 ; 10 id. 76 ; 8 W. & S. 192; 5 Barr, 329 ; 7 H. 40 ; 4 C. 425 ; 10 S. 387 ; 23 id. 426 ; 27 id. 130.]