Parker C. J.
delivered the opinion of the Court. [After stating the facts.] It appears from the foregoing recital, that on the 1st of July, 1805, Codrnan.became seised in fee and in mortgage of the estate by virtue of the deed to him, the prior deed of W. S. S. to his father not having been registered until after that time, and Codman havingpno knowledge of the prior deed. But as the deed to J. S. the father was registered after-wards, and before any assignment of the mortgage by Codman, J. S. the father was seised of the equity of redemption of that mortgage. The deed of release and quitclaim of Codman to the intestate made for a valuable consideration, with the delivery over of the mortgage deed, operated as an assignment of the mortgage to him,- so that on the execution of that release the intestate became seised of the legal estate, and the equity of redemption was in J. S. the father. Thus no estate whatever remained in W. S. S. and a discharge of the mortgage would vest an indefeasible estate in his father. But the intestate, on the 8th of January, 1811, made his deed of release to W. S. S., and a principal question is, whether'any and what estate passed to W. S- S. by virtue of that deed. If, as contended by the counsel for the demandant, it passed the legal estate as a bargain and sale, or as an assignment to him of the mortgage, then his deed made on the same day to the intestate vested the estate in him, and he would be seised so as to support his action. If it amounted only to a discharge of. Codman’s mortgage, then the effect would be to relieve the title of J. S. the father from an incumbrance and he would be the lawful owner and the only person seised of the estate. We have labored much to come to the conclusion contended for by the demandant’s counsel, as the equity of the case is clearly on that side, so far as we can judge from the conveyances, but we find ourselves met at every step by rules of law which our duty will not allow us to neglect. It is impossible to consider the deeds between the intestate and W. S. S. as conveying a momentary seisin to the latter and a restoration of the title to the former in the shape of a mortgage, because the release to W. S. S. conveyed no estate, he not being in possession nor having any title at the time, nor can it be considered as an assignment of the mortgage of Codman to him, for he, being the mortgager and having con *56 veyed the equity of redemption by the legal effect of his deed to his father, could not at the same time stand on the footing of a mortgagee with power to convey to the prejudice of his father ; so that the only effect which the release to him could have, was to discharge the mortgage, and then J. 8. the father, who held the equity of redemption and was in possession, became the legal owner of the estate, and thus the intestate, by this blundering system of conveyancing, lost the benefit of his mortgage. We see no way of coming to a different conclusion.
But there is another branch of the case attended with equal difficulties. J. S. the father died in 1813 ; and W. S. S., who mortgaged to the intestate, and J. S. the tenant, together with R. S., who is dead, became his only heirs. The title to a moiety of the premises, R. S. having died without issue and unmarried, thus came to W. S. S., and by virtue of his deed and the operation of law his right in the estate would enure to the intestate by way of estoppel or rebutter, so that if this action were against W. S. S. or his heirs, or any person claiming by or through him, they would be estopped to deny the title of the demandant. J. S. the tenant is a stranger to the deed of his brother, and he is not privy in estate, his title to one moiety of the tenement being independent of him, and the question is, whether he is bound by the estoppel, so that he cannot be allowed to say that nothing passed by the deed of W. S. S. to the intestate, as to the other moiety in which he has no right. On this point we have made considerable research, but without gaining much light. The old books are obscure on the subject and somewhat contradictory. In 2 H. 6, 2, it is said that a stranger cannot say Hens passa per le fait, but the court was divided ; and in 2 H. 4, 21 and 22, it is stated that a stranger shall not plead non est factum, but may plead Hens passa per le fait, and this probably is the law. Certainly this has been the practice with us, for nothing is more common, than, in the trial of real actions or actions of trespass quare clausum, for one party to avoid the effect of a deed produced by the other, by showing that the grantor was not seised and so nothing passed by his deed. Whether this is confined to the case of the dis-seisin of the grantor, or is applicable to other cases of an ineffectual deed, may be doubted, but the party in possession *57 against whom a mere quitclaim is produced, may always avoid it by showing that the releasee was not in possession and so took nothing by the deed.[1] In the case of a deed of bargain and sale it would seem that an adverse seisin would be required to defeat its operation, otherwise there seems to be no good reason why a stranger should question its operation. For it would seem to be a strange doctrine, that one who held title by deed, unimpeachable by the grantor, his heirs, or any privies in estate, should not be able to maintain his title against a mere trespasser, or one who has no legal interest in the land; but such is the law, provided a stranger may question his right on the ground that nothing passed by the deed because the grantor at the making of it had nothing in the land.
There are some authorities which look as if this absurdity did not exist, but they are not so explicit as we could wish. Thus it is stated in the marginal note to the case of Trevivan v. Lawrence, 1 Salk. 276, that where an estoppel works an inter-terest in the land, it runs with the land and is a title. The authorities cited, however, do not fully bear out this position, only going to show that all parties, privies, &c., are bound by the estoppel, but in the case itself it is laid down by Lord Holt, that where an estoppel works on the interest of the land it runs with it into whose hands soever the land shall come, and that an ejectment is maintainable on a mere estoppel. Unless this were intended to be restricted to ejectment against those who were parties or privies to the instrument creating the estoppel, *58 here is authority for the present case, and there is nothing in ^16 case cited suggesting such-a qualification. And as Lord Coke lays down the principle, that not only parties and privies in estate, but all those who come in in the post, are bound by an estoppel, perhaps the above position of Lord Holt, that an ejectment may be • maintained on an estoppel, is correct and general in its application. Co. Lit. 352 b.
And this should seem to be the ground of decision in the following case from 1 Rol. Abr. 868, Estoppel, K, pl. 3. A disseises B of land, and afterwards B suffers a common recovery in which the precipe is brought against B, and by the record the sheriff puts the recoveror in possession upon a writ of habere facias seisinam : then C, a stranger, enters upon A and disseises him, upon which the recoveror enters ; and his entry is lawful, for although B was not a good tenant to the precipe, still this is a good recovery by estoppel against B, his heirs and assigns, it being fee-simple land, and binds all except A, who was seised of the land at the time of the recovery, and therefore by consequence shall estop C, who claims not under A, but comes in, after the recovery, by disseisin. The principle of this case, if applied to the case before us, will warrant a decision in favor of the demandant for so much of the land as came to W. S. S. on the death of his father and brother Richard. The intestate had a title against W. S. S. his heirs and assigns by way of estoppel created by deed with warranty ; this title enured or operated upon the land at the moment the descent was cast on W. S. S. The tenant is a stranger to this title, and having entered upon the land claiming the whole and defending it by his plea of non disseisivit, he must yield to the intestate, who stands in the place of recoveror in the abovecited case, and the estoppel under which he claims shall bind the tenant, because as to the moiety of W. S. S. the tenant comes in after the estoppel and that by disseisin, because by his plea he defends on a title which he has not.
There are other cases which, though not directly in point, seem to recognise the principle involved in these which have been cited. The general doctrine, that an estoppel which works upon real estate is not a mere conclusion but may pass an interest and constitute a title, is discussed at some length in *59 the case of Weale v. Lower, Pollexf. 66. It is there laid down by Lord Chief Justice Hale, and the position is sanctioned by all the judges called to his assistance, in regard to a fine, which when it was levied passed no interest because the estate on which it was to operate was contingent, “ that the estate upon the happening of the contingency feeds this estoppel, and then the estate by estoppel becometh an estate in interest, and shall be of the same effect as if the contingency had happened before the fine levied.” The doctrine thus laid down is recognised in 2 Cruise’s Dig. 452, tit. 16, Remainder, c. 8, § 19, 20. The same doctrine is maintained in Smith v. Stapleton, Plowd. 434 ; Rawlyns’ Case, 4 Co. 53, 54 ; Bac. Abr. Leases, O ; Com. Dig. Estoppel, E, 10 ; Co. Lit. 47 b, n. 307. The general principle to be deduced from all these authorities is, that an instrument which legally creates an estoppel to a party undertaking to convey real estate, he having nothing in the estate at the time of the conveyance but acquiring a title after-wards by descent or purchase, does in fact pass an interest and a title from the moment such estate comes to the grantor.[1] *60 And if this be law, there cannot be any sound principle which should limit a title thus acquired to a claim by the grantor or his representatives. It would be but a feeble title which would not enable the holder to defend his possession against trespassers, or those who should attempt to disseise him after his title is established. Nor does the doctrine in any degree tend to set up or give validity to conveyances made in violation of the statutes against champerty, maintenance, or buying of pretended titles, which may be considered as part of our common law, for if they are avoided it is because the seisin was in other persons at the time of the conveyance holding adversely, and this known to the parties ; whereas, according to the doctrine maintained, it is only against those who have sold the land and received the equivalent, and those who claim under them, and against mere strangers who usurp the possession without right or title, that the principle is to be applied.
It has been the common understanding, that when one supposing he has a title, though in fact he has none, for a valuable consideration conveys land by deed with warranty, and after-wards purchases, his new title shall accrue to the benefit of his grantee. There are many cases which seem to be founded upon this principle. Thus in the case of Terrett v. Taylor, 9 Cranch, 43, it was held that a deed which did not operate by way of grant to convey a fee, yet having a general warranty binding the grantor and his heirs for ever, operated by way of estoppel to confirm a title, and the deed thus operating was set up against the defendants who were not parties nor privies, but came in in the post under another title. This tacitly admits the doctrine we are maintaining, for the action could not have been supported without such admission. And the case of Mason v. Muncaster, 9 Wheat. 454, was decided on the same principle. The same doctrine is recognised in several New York cases. Thus in Jackson v. Matsdorf, 11 Johns. R. 97, Thompson C. J. says a deed containing a warranty will pass any title subsequently acquired by the grantor. And the cases of M'Crackin v. Wright, 14 Johns. R. 194, and M'Williams v. Nisly, 2 Serg. & Rawle, 515, are of the same character. We have not found any decided cases which contradict these, unless the case of Davis v. Hayden et al., 9 Mass. R. 519, *61 should be so considered. The deed from John Davis to his brother Edward of one seventh part of the land demanded in the action, was held to convey nothing, because at the time of making it the grantor had nothing in the land, being only heir apparent.[1] The intention was to convey one seventh of what was supposed to be a vested remainder, Edward Davis the elder being in possession, having as was supposed a life estate only in the premises. The question of estoppel or rebutter was not presented in that case, nor does it appear by the state of facts reported that the deed of John to his brother Edward was with warranty ; which is an essential feature in the doctrine established by the other cases.
We have before adverted to a distinction between a deed of land of which there is not any adverse possession at the time, and one which is given when the grantor is actually disseised and this fact known to the grantee at the time. In the latter case, by the policy of the law and in virtue of ancient statutes, perhaps the deed would be wholly inoperative, both parties being transgressors in relation to such conveyance ;[2] but where the disseisin of the grantor is not known, which may be the case where the land granted is remote from the domicile of the parties, as no offence will have been committed, there seems to be no good reason why the contract between the parties should be defeated. And the history of our judicial proceedings will show that this distinction has been recognised, for there are numerous cases of grants by proprietors of land of which they were in fact disseised at the time of the grant; and in order to remove the disseisin, actions were brought in the name of the proprietors and recoveries had, after which the grantee has entered under his grant and maintained his title without any *62 question in relation to subsequent disseisors ; from which it ls to lnfen’ed that none but those who were in possession at the time when the grant was made, can avail themselves of the want of seisin of the grantor at the execution of the deed.[1]
In the case before us there is nothing which would implicate the grantee in the offence of buying pretended titles. At the time of the execution of the deed by W. S. S. to Somes the intestate, it was believed that this was a proper form of conveyance to carry into effect a contract, which to all appearance was just and fair. Until then the legal title was in Codman, as mortgagee, and the whole sum due on the mortgage was paid by the intestate, who, if he had rested on his deed from Cod-man, rvould have had an indisputable title to the whole of the tenement as security for his money. The mode unfortunately adopted let in J. S. the father under his deed, which had been legally supplanted by Codman’s deed, so that it was only by this blunder J. S. the father could claim any thing ; and indeed he never seems to have asserted any claim during his life, living it is true on the premises, as did W. S. S., and probably well knowing the claim which Codman had as mortgagee. Justice requires that whatever came to W. S. S. through his father should now be enjoyed by Somes, and we are satisfied that the law will support this claim.
It was objected at the argument, that though this be the law, yet that under the declaration in which the demandant has counted upon an entire seisin of the whole estate, a judgment cannot be rendered for an undivided moiety. This objection appeared formidable when first stated, but having since had occasion to consider this question very deliberately in the case of Dewey v. Brown, 2 Pick. 387, we came to the conclusion, upon very satisfactory principles, that the objection has no validity.[2]
According to the agreement of the parties therefore in this case, the verdict is to be so altered as that the demandant shall recover seisin and possession of one undivided moiety of the *63 premises described in the writ; and the judgment will be conditional, as in an action upon a mortgage.[1]

 This doctrine has been, considerably qualified; so that a deed or other instrument, though in form a mere release or quitclaim, will be so construed and applied as to pass an estate, when such was the intention, even where the releasee is out of possession. Russell v. Coffin, 8 Pick. 151; Pray v. Pierce, 7 Mass. R. 381; Reformed Dutch Church v. Veeder, 4 Wendell, 496; Shep. Touch. 82, 83; Roe v. Tranmer, 2 Wils. 78; Croade v. Ingraham, 13 Pick. 35. But see Warren v. Childs, 11 Mass. R. 225; Swett v. Poor, 11 Mass. R. 549; Hamblet v. Francis, 4 Mass. R. 78, 79. See also Porter v. Perkins, 5 Mass. R. 233; Thatcher v. Cobb, 5 Pick. 425; Kennebeck Purchase v. Call, 1 Mass. R. 483; Bennett v. Irwin, 3 Johns. R. 366.
In this State a deed of quitclaim and release, of the form in common use here, is sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale. Revised Stat. c. 59, § 5.
A release or quitclaim deed in Connecticut is considered an original conveyance. It is most commonly used however to convey the legal title to one who already has the equitable title. Dart v. Dart, 7 Connect. R. 250.

 Comstock v. Smith, 13 Pick. 116; Carver v. Astor, 4 Peters, 83 et seq.; Jackson v. Hoffman, 9 Cowen, 271; Sinclair v. Jackson, 8 Cowen, 586; Doe v. Oliver, 10 Barn. & Cressw. 181; Vicks v. Edwards, 3 P. Wms. 372; Fairbanks v. Williamson, 7 Greenl. 100; Allen v. Sayward, 5 Greenl. 231; Doe v. Martyn, 8 Barn. & Cressw. 497; Fairtitle v. Gilbert, 2 T. R. 171; Rees v. Lloyd, Wightwick, 123; Helps v. Hereford, 2 Barn. & Ald. 242; Denn v. Cornell, 3 Johns. Cas. 174; Penrose v. Griffith, 4 Binn. 231; Garwood v. Dennis, 4 Binn. 314; Fearne, (edit. 1820,) 365, c. 6, § 5; Blight v. Rochester, 7 Wheat. 535 ; Langer v. Felton, 1 Rawle, 141; Hathorne v. Haines, 1 Greenl. 247; Stone v. Wyse, 7 Connect. R. 214; Douglass v. Scott, 5 Ohio R. 194; Bond v. Swearingen, 1 Ohio R. 412; Allen v. Parish, 3 Ohio R. 116; Fite v. Doe, 1 Blackford, 131; Coe v. Talcot, 5 Day, 88; Stearns on Real Actions, (2nd edit.) 34, et seq.
So where a man having title to land, stands by and knowingly permits another to give a deed of it, without making his claim known, he is estopped from afterwards setting up his title. Henderson v. Overton, 2 Yerger, 394. So a person standing by and suffering another to build on his land, forfeits his claim to the land. Tarrant v. Terry, 1 Bay, 239.
But a release does not cieate an estoppel against a title subsequently acquired, either in the releasor or in those claiming under him. Comstock v. Smith, 13 Pick. 116; Right v. Bucknell, 2 Barn. & Adol. 278; Jackson v. Winslow, 9 Cowen, 18, 19; Jackson v. Hubble, 1 Cowen, 616. But see Bensley v. Burdon, 2 Sim. & Stu. 519; Russell v. Coffin, 8 Pick. 153. Neither does a covenant that a party has a good right to convey, create an estoppel against a subsequent title. Allen v. Sayward, 5 Greenl. 227.

 If an heir apparent sells a reversion, in the lifetime of his father, at an undervalue, the court will not, in favor of such, a purchaser, decree a specific performance of the covenant for further assurance. Johnson v. Nott, 1 Vern. 171. See also Boynton v. Hubbard, 7 Mass. R. 112.

 Brinley v. Whiting, 5 Pick. 348; Cleverley v. Whitney, 7 Pick. 36; Swett v. Poor, 11 Mass. R. 549; Bowers v. Porter, 4 Pick. 198; Walcott v. Knight, 6 Mass. R. 418; Everenden v. Beaumont, 7 Mass. R. 78; Prescott v. Heard, 10 Mass. R. 60; Patridge v. Strange, 1 Plowd. 88 a; Co. Lit. 214 a; Williams v. Jackson, 5 Johns. R. 489; Stoever v. Whitman, 6 Binn. 420; Aldridge v. Kincaid, 2 Lettell, 393; Warren v. Childs, 11 Mass. R. 225; 4 Kent’s Comm.

 Swett v. Poor, 11 Mass. R. 554.

 Stearns on Real Actions, (2nd edit.) 219; Inglis v. Sailors’ Snug Harbor, 3 Peters, 134, 187, 189; Clanrickard v. Sidney, Hob. 272, 282; Holyoke v. Haskins, 9 Pick. 264; Revised Stat. c. 101, § 11.

 1 Powell on Mortg. (Rand’s edit.) 262 a, note; 2 id. 499 a; Revised Stat. c. 107, § 3, 4, 5, 6.