## Lloyd *versus* Lynch.

28　419
134　606
28　419
173　549
28　419
185　335

If one of several tenants in common purchase an outstanding title, it will enure to the benefit of all.

If the land be sold at treasurer's sale to a stranger, and a tenant in common takes an assignment of the deed before the time for redemption has expired, it will confer upon him no independent title as against his co-tenants in common.

The declaration of a vendee at the time of making a purchase of land, that "he was going to buy it for his son," without any proof of a previous agreement to do so, or evidence that the son furnished the money to pay for it, is insufficient to create a trust in favour of the son.

A receipt in a deed for the purchase-money, is no evidence whatever of the fact of its payment against a stranger, but is a mere *ex parte* declaration, not under oath, and taken without any opportunity to cross-examine.

Where a party claims as a *bona fide* purchaser for a valuable consideration paid, without notice of a trust, he must *affirmatively* prove the payment of the consideration by other evidence than the receipt upon the deed.

ERROR to the Common Pleas of *Blair county*.

This was an action of ejectment by Thomas Lynch and Catharine his wife, for one undivided third part of 349 acres and 90 perches of land, against Gilbert L. Lloyd, in which the facts were as follows :—Peter Collins and James Ross were the owners of the land in dispute, and on the 7th day of October, 1841, made an article of agreement under seal with Barnabas Farrell to convey the same to him for the sum of $375, of which sum $160 was to be paid at the execution of the article of agreement, $130 on or before the 1st day of May then next, and the balance of $85 on the 1st of May, 1843. Barnabas Farrell at the date of the article paid to Ross & Collins $168, and died on the 24th October, 1841, leaving a wife and three children, Thomas, Catharine, and Elizabeth, him surviving. On the 9th January, 1843, Thomas Farrell paid the balance of the purchase-money to Ross & Collins, and on the same day they conveyed the land to him. The land being unseated, was charged with taxes, and the same being unpaid, the land was in 1846 sold therefor at treasurer's sale to John Armitage, and a treasurer's deed duly executed and acknowledged to him for the same. On the 9th December, 1846, John Armitage and wife assigned this deed to Thomas Farrell in consideration of $30, and on the 1st July, 1854, Thomas Farrell conveyed the land by deed to Gilbert L. Lloyd, the defendant, in which deed the consideration was stated to be $6000, and receipt annexed thereto for the consideration in full.

The wife of Barnabas Farrell died several years ago, and Catharine Lynch is one of the daughters of Farrell, and claims to recover the undivided third part of the land as one of his heirs at law, and contended that, Barnabas Farrell having died seised of the equitable title to the premises, the same descended at his death to

his heirs, and Thomas Farrell, one of the tenants in common, having purchased the outstanding legal title, would hold it as a trustee for himself and co-tenants in common. That the transfer from Armitage of the treasurer's deed before the time for redemption had expired, was virtually a redemption, and which enured to the benefit of his co-heirs, he being entitled to hold the title only to compel contribution by the others of their just proportions of the money paid to perfect it. The plaintiffs then paid into court the sum of $140.57, being one-third of the purchase-money paid by Thomas Farrell to Ross & Collins and to Armitage.

The defendant relied upon a resulting trust in favour of Thomas Farrell at the date of the original purchase by his father.

Peter Collins testified that at the time he went along to show the land to Barnabas Farrell, and before the contract was made, he said he was going to buy it for his son. He had but the one son, Thomas Farrell. The reason why the deed was afterwards made to Thomas was, that the old man had told him it was for his son. For the last payment, Thomas Farrell gave his judgment note, which was afterwards paid.

In his cross-examination he stated that this conversation took place between him and Farrell when they were alone, in the woods; that there was nothing said about it at the time the agreement was written and signed. When Thomas came for the deed, Ross objected to giving him the deed, for fear of the other heirs claiming a portion. That witness told Ross that the old man had told him he bought it for Thomas. That he had never seen Barnabas Farrell until the day he came to buy the land, nor Thomas, and had no acquaintance with either of them. And that he was anxious to have the deed made to Thomas, as he was afraid Ross would sell it again, and that he thought they would have sold it again if Thomas had not paid for it after his father's death.

Thomas Farrell, Sr., a brother of Barnabas Farrell, testified that he believed Barnabas owned this property at the time of his death, but did not own any other—that he was poor so far as witness knew when he came from the old country in 1838. That he was something over fifty years of age when he died. That it was Thomas's earnings that brought him to this country, and his wife and daughters with him. That Thomas lived with witness at the time his parents came in, and was about nineteen years of age at the time. That afterwards he went to live with his father. That Thomas supported his mother after the death of his father until she died, about 1852. That the plaintiff Catharine did not live with Thomas, having married shortly after the family came in.

In his cross-examination he stated that the old man was industrious, and kept a boarding-house at the iron works.

The plaintiff then called John Ross, who testified to the making of the agreement, and at that time Barnabas said he had money

[Lloyd v. Lynch.]

coming from Spang's works; that he had enough earned to pay for it; that there was nothing said about buying it for anybody else. Witness never saw Thomas Farrel until the deed to him was executed. He wanted the deed; he said his father allowed the land for him. I told him that would not be authority for me, and was contrary to my way of doing business. That Collins and Farrel joined in persuading him to make the deed. Collins said Thomas Farrel told him that he had paid all the money, and his father allowed him to get the land, but do not recollect of Peter Collins or anybody else saying to me that the land was purchased by Barnabas for anybody but himself.

I remonstrated against making a deed to Thomas Farrel, on account of the other heirs, and he agreed he would furnish a release from the other heirs, and from his mother, by a certain time, to exonerate me. I do not recollect the length of time for the release. At the time of the last payment we were to make a patent, and we held back the patent until the release would come. It has never been asked for since.

Plaintiff proposes to show by the witness that Peter Collins gave as a reason at the time for making a deed to Thomas that he wanted money. This in answer to what is stated in the deposition of Peter Collins, read by the defendant.

Objected, that what is offered to be proved was not in the presence of Thomas Farrel.

Objection overruled, and defendant excepts

Some time previous Peter Collins asked me to go with him to Farrel's. This was after Farrel's death. We called in the afternoon. At the time of the execution of the deed, Peter Collins told me he was anxious to have the deed executed; he was in debt, and must have money.

The court below (TAYLOR, P. J.), after stating the facts, delivered the following opinion, directing a verdict for the plaintiffs:—

" This is an ejectment for one undivided third of a tract of land, in the name of Abraham Bell, which Barnabas Farrel, on the 7th October, 1841, purchased by articles of agreement from James Ross and Peter Collins, for three hundred and seventy-five dollars; one hundred and sixty dollars to be paid at the time, one hundred and thirty dollars on the 1st of May, 1842, and the remaining eighty-five dollars on the 1st of May, 1843, with interest. He paid one hundred and sixty-eight dollars at the date of the agreement. On the 24th of the same month he died, leaving three children, Thomas, Catharine, intermarried with Thomas Lynch, and Elizabeth. On the 9th of January, 1843, Thomas, having paid the balance of the purchase-money, took a deed from Ross and Collins to himself for the consideration of three hundred and seventy-five dollars, in execution of the contract of his father. On the 22d of August, 1846, the tract was sold by the treasurer to John Armitage, who, on the 9th of December, 1846, for the con-

[Lloyd *v.* Lynch.]

sideration of thirty dollars, assigned the treasurer's deed to Thomas Farrel, who subsequently conveyed to Gilbert L. Lloyd, the defendant.

" To April Term, 1855, the plaintiffs, Lynch and wife, in her right as one of the three children of Barnabas Farrel, brought this ejectment for the undivided third of the tract, and have this day paid into court, one hundred and forty dollars and fifty-seven cents, being the one-third of the purchase-money paid by Thomas Farrel to Ross and Collins, and the one-third of the money paid by him to John Armitage, with interest to this term, to be paid to the defendants on their execution of a deed to the plaintiffs for one-third of the premises. Are they entitled to recover?

" So far as we have stated the case, there is no disputed fact; and, upon the facts thus stated, we are of opinion that the plaintiffs are, in law, entitled to a verdict.

" The defendant alleges:

" 1. That it should be submitted to the jury to decide whether the money paid by Barnabas Farrel, at the execution of the agreement, was not Thomas Farrel's money; and whether the purchase, though made by the old man, and in his own name, was not made for Thomas. But we are of opinion that there is not evidence upon which that question should be submitted.

" 2. It is further contended in the defence, that the assignment of the treasurer's deed by Armitage and wife, vested in Thomas an independent title to the land, upon which he or his vendee is entitled to stand.

" We do not assent to this proposition. Whenever two or more persons have a joint estate, our law raises or implies the obligation to deal fairly with one another. If one of them takes a conveyance in his own name, to complete a title before imperfect, a conveyance of the legal title, for example, when he and the others connected with him in interest, had before an equitable estate, he takes and holds it for himself, and as a trustee for his co-tenants. It enures to the common benefit of all; subject to his right to demand from them, their proportion of what he may have expended in the acquisition. This familiar rule, recognised in numerous decisions, is just in any case, but most righteous when it applies to brothers and sisters in the management of an estate inherited from their common parent. The assignment of the treasurer's deed to Thomas, a few months after the sale, was virtually a redemption of the tract, and enured, in like manner, to the common benefit of all interested in the title. Nor does Mr. Lloyd, the defendant, by virtue of his deed from Thomas, stand in a situation in which he is protected.

" Upon the whole case, then, it is our opinion that the plaintiffs are entitled to a verdict for the one undivided third of the land described in the writ; and so we instruct you."

[Lloyd v. Lynch.]

The errors assigned were to the admission of the testimony of Ross as contained in the exception stated. In not submitting to the jury whether the money was not paid by, and the land purchased for Thomas. In refusing to say to the jury that the treasurer's deed gave an independent title to Thomas. And in saying that Lloyd stood in no better situation than Thomas Farrel, and in directing a verdict for the plaintiffs.

*Hoffius,* for plaintiff in error.

*Blair,* for defendant in error.

The opinion of the court was delivered by

LEWIS, C. J.—On the 7th October, 1841, James Ross and Peter Collins, being then the owners of the land in controversy, entered into a written contract to convey it to Barnabas Farrel, in consideration of the sum of $375. The sum of $168 was paid by Barnabas Farrel, at the execution of the article. The residue was to be paid in instalments, the last of which became due on the 1st May, 1843. Barnabas Farrel died on the 24th October, 1841, leaving three children—Thomas, Catharine, and Elizabeth. This ejectment was brought to recover the share which descended to Catharine as the heir of her father.

The defence is founded on a conveyance of the 7th February, 1844, by James Ross and Peter Collins to Thomas Farrel, on his securing the unpaid portion of the purchase-money due on the contract; a treasurer's deed of the 22d August, 1846, to John Armitage, for taxes assessed for the years 1844 and 1845; an assignment of the last-mentioned deed by Armitage to Thomas Farrel on the 9th December, 1846, and a conveyance from Thomas Farrel to Gilbert L. Lloyd on the 1st July, 1854. Peter Collins testifies that when Barnabas Farrel was looking at the land, before the contract was made, he said he was "going to buy it for his son;" and adds, that that was the reason why he and Ross "made the deed to Thomas Farrel" several years after the death of Barnabas Farrel. This evidence is in conflict with that of James Ross; but, taking it for truth, it is entirely insufficient to create a trust in favour of Thomas Farrel. There was no evidence that the hand-money paid at the execution of the contract, belonged to Thomas Farrel. On the contrary, the evidence is that Barnabas at that time declared that he " had money enough to pay for it;" that he had " money from Spang's works." He took the contract in his own name. The mere declaration of a vendee that he intends to buy for another, without evidence of any previous agreement to do so, or of any advance of money for the purpose, raises no trust which can be supported in equity: Robertson *v.* Robertson, 9 *Watts* 32; Sidle *v.* Waters, 5 *Watts* 391; Bear *v.* Whissler, 7 *Watts* 147.

Thomas Farrel, on the death of his father, became a tenant in

common with his two sisters. Independently of his duty as a brother, his obligations to his sisters, as a tenant in common with them, required that any title which he might obtain to the premises, should enure to the benefit of all. This principle of law gives to all the heirs of Barnabas Farrel the benefit of the two deeds acquired by one of them for the premises held in common: 5 *John. Ch. Rep.* 408; Smily *v.* Dixon, 1 *Penn. Rep.* 439; Weaver *v.* Wible, 1 *Casey* 272. Those deeds can only be used as a security to enforce contribution for the money paid for them.

But it is alleged that Gilbert L. Lloyd is a purchaser for a valuable consideration paid, without notice of the rights of the plaintiffs below. He gave no evidence whatever of the payment of the purchase-money, except the receipt on the deed from Thomas Farrel of the 1st July, 1854. That receipt is undoubtedly evidence of payment against Thomas Farrel himself, and all who *subsequently* derive title from him. It is also evidence to pass the right of Thomas Farrel, whatever it was, at the time. But it is no evidence whatever of the fact of payment, against a stranger, or even against one who derived title from Thomas Farrel previously to the date of the conveyance to Lloyd. Against them it is nothing but hearsay. It is a mere *ex parte* declaration, not under oath, taken without any opportunity to cross-examine. It has been long settled, that such declarations are not evidence against strangers. It is upon this principle that an endorsement by the payee of negotiable paper, although sufficient evidence to pass his right and to enable the holder to maintain an action in his own name, is entirely insufficient to show that he paid a valuable consideration for it, so as to exclude a defence which would be otherwise available: Holme *v.* Karsper, 5 *Binn.* 471; Belzhoover *v.* Blackstock, 3 *Watts* 20. It is upon this principle that the receipt in a deed is not evidence of payment of the purchase-money against creditors who attack it by evidence tending to show that it was made to defraud them: Clark *v.* Depew, 1 *Casey* 515. It is upon this principle that it has been constantly held that the declarations of a grantor, after he has parted with his interest, are not evidence against his grantee: Packer *v.* Gonsales, 1 *S. & R.* 526; Patton *v.* Goldsborough, 9 *S. & R.* 47; Babb *v.* Clemson, 12 *S. & R.* 328; Hoffman *v.* Lee, 3 *Watts* 352; McCulloch *v.* Cowher, 5 *W. & S.* 427; Gregory *v.* Griffin, 1 *Barr* 208. It is on this principle that it has been repeatedly held that receipts of third persons are not evidence of payment of money, unless those persons are either officers of the law, or agents of the party against whom they are offered: Cutbush *v.* Gilbert, 4 *S. & R.* 555; Morton *v.* Morton, 13 *S. & R.* 108. On the same principle it has been a hundred times decided that recitals in deeds are not evidence of the facts recited against strangers, or persons who derive title from the grantors before the execution

[Lloyd v. Lynch.]

of the deeds containing such recitals: Penrose v. Griffith, 4 *Binn.* 231, *Id.* 327; 6 *Barr* 239, *Id.* 254; 3 *W. & S.* 332. It is on this principle that the rule in chancery practice requires that the plea of "purchaser for a valuable consideration" should distinctly aver that the consideration-money was *bona fide* and *truly paid, independently of the recital in the purchase deed:* 2 *Daniel's Ch. Prac.* 201. Although the courts in this country may not adopt all the rules of practice in the English chancery, they are governed by the same equity principles, and enforce them in some form. Chancellor DESSAUSSURE, in speaking of this plea, has very properly held that its substance must be regarded in administering equity; and that it must be averred that the purchase-money was "*bona fide*, truly, and actually paid:" Snelgrove v. Snelgrove, 4 *Des. Ch. R.* 286. No new principle was announced when it was held that the receipt in the deed of purchase is not evidence to support this material averment against any persons except parties to the deed, or persons who subsequently derive title from the grantor. This application of a very familiar rule of evidence was fully sanctioned in Union Canal Company v. Young, 1 *Wh.* 432; Rogers v. Hall, 4 *Watts* 362; Bolton v. Johns, 5 *Barr* 151; and Henry v. Raiman, 1 *Casey* 360. A receipt for the purchase-money, at the foot of the deed, has been held to be "evidence of the lowest order" even against the party signing it; because it was "every day's practice to have such a receipt" on the deed "when perhaps nine times in ten there was not a shilling paid:" Hamilton v. McGuire, 3 *S. & R.* 356. If such evidence were received against strangers, for the purpose of extinguishing their equitable rights, the salutary rules established for ages would be subverted; hearsay evidence would be substituted for testimony under the sanction of an oath, and all the advantages of a cross-examination would be swept away. Under such a system no equitable title could be protected. But it is urged that there is a presumption that the grantor and grantee have acted with integrity. This may be so; but that is no reason why their declarations should be given in evidence against persons who have no connexion with them. If they are acquainted with material facts, they are as much bound to deliver their testimony under oath as other persons, if competent witnesses. If interested, neither their declarations nor their testimony can be received in their own favour.

But the rejection of a receipt signed by a stranger implies no imputation of dishonesty in the party signing it. It is always signed whenever a conveyance is made, and proves nothing further, even against the grantor, than that he has either received the purchase-money or has taken security for it. Taking security for it is no payment which would defeat a prior title. *Bona fide* payment is an affirmative fact peculiarly within the knowledge of

the party making such payment or claiming advantage from it. It is, therefore, easy for him to prove it. While, on the other hand, the opposite party, who is a stranger to the transaction, might have insuperable difficulties in proving a negative. It is against all the reason and life of the law that such a burthen should be imposed upon him.

It follows from this view of the case that Gilbert L. Lloyd stands in no better condition than Thomas Farrel, and that the court was correct in giving a positive direction in favour of the plaintiffs below. This disposes of the whole case.

Judgment affirmed.