# Olfsheskey *v.* Graham, Appellant.

*Statute of frauds—Parol sale of land—Possession—Evidence.*

1. In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of land. It must fix the amount of the consideration. It must establish the facts that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained, and it must show performance or part performance by the vendee which could not be compensated in damages and such as would make rescission inequitable and unjust.

*Deeds—Recitals—Vendor and vendee—No title.*

2. No title can be divested by a mere recital in a deed, or by any form of deed to which the holder of the title is not a party.

3. Where an executor sells and conveys by deed timber on a tract of land, and the grantees cut the timber, and thereafter the executor conveys the same land to another person without reserving the timber, but reciting that the testator had sold the land in his lifetime by a verbal agreement to another person who had sold it to the grantee in the second deed, neither the omission to reserve the timber in the second deed, nor the recital therein will give the second grantee title to the timber as against the first grantee of the executor.

Argued Oct. 25, 1910. Appeal, No. 20, Oct. T., 1910, by defendants, from judgment of C. P. Clearfield Co., Feb. T., 1909, No. 66, on verdict for plaintiff in case of August Olfsheskey *v.* Alfred Graham, J. W. Allen and John W. Coleman, trading as the Graham Lumber Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for alleged unlawful cutting of timber. Before GILLAN, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $528. Defendant appealed.

*Errors assigned* were various instructions.

*Singleton Bell,* with him *Howard B. Hartswick,* and *A. H. Woodward,* for appellant.—Statements made by the transferror of realty or of personalty, after transfer of title are not receivable as admissions against the transferree: Baldwin v. Stier, 191 Pa. 432; Miller v. Eshleman, 43 Leg. Int. 499.

Title once shown is presumed to continue: Hartman v. Incline Plane Co., 11 Pa. Superior Ct. 438.

The defendant stood on a complete paper title. A title that would justify the recovery of the possession of this property: Williams v. Milligan, 183 Pa. 386; Aitkin v. Young, 12 Pa. 15; Derr v. Ackerman, 182 Pa. 591.

When the contract is executory, the conveyance by deed does not relate back to the inception of the contract: Day v. Willy, 3 Brewster, 43; Giebner v. Patterson, 5 Cent. Repr. 723; Flory v. Houck 186, Pa. 263; Willey v. Day, 51 Pa. 51; Barnes v. Black, 193 Pa. 447.

*W. C. Miller,* for appellee.—As a general proposition the execution and delivery of the deed relates back to the inception of the grantee's equitable title: Young v. Edwards, 72 Pa. 257; Fisk v. Duncan, 83 Pa. 196; Schenley v. Pittsburg, 104 Pa. 472; Madore's App., 129 Pa. 15.

The agreement to convey this land by Schoonover carried with it the equitable title to the vendee, Martin. Martin's sale to Olfsheskey conveyed the same title. This equitable estate was sufficient to support an action of trespass: Miller v. Zufall, 113 Pa. 317; Arnold v. Pfoutz, 117 Pa. 103; Irwin v. Patchen, 164 Pa. 51; Gotshall v. Langdon & Co., 16 Pa. Superior Ct. 158.

OPINION BY RICE, P. J., April 17, 1911:

In this action of trespass the plaintiff claimed treble damages under the act of March 29, 1824, P. L. 152, for the cutting and conversion of timber trees growing upon two adjoining tracts of land, the first containing fifteen acres and

twenty-two perches and the second sixteen acres and nineteen perches, of which, it is alleged in the statement of claim, the plaintiff was the owner and lawfully in possession.   The land is described in the statement of claim as being the premises which O. L. Schoonover contracted to sell to Louis Martin and the latter sold to the plaintiff on January 13, 1906.   The evidence that the defendants cut and removed the timber on the sixteen-acre tract (where, it was admitted on the trial, all the cutting was done) was not in dispute, but they claimed title to the timber on this and some other tracts by purchase at public sale from the executor of O. L. Schoonover, deceased, which purchase the executor and heirs of Schoonover confirmed by a formal grant under seal dated December 7, 1906.   It is thus seen that the title under which both parties claimed was originally in O. L. Schoonover, and that the primary question for determination at the trial was, whether prior to December 7, 1906, the plaintiff had acquired such title to the timber on the sixteen-acre tract as enabled him to maintain trespass against the defendants for the cutting done on that tract in 1908.   As there was a request for binding instructions in favor of the defendants, it is necessary to review the evidence adduced by the plaintiff as to his title and possession, and to refer to certain other undisputed facts bearing upon these subjects.

Harry Reese, a surveyor, testified upon the call of the plaintiff, that four or five years before the trial, which was in September, 1909, at the instance of Schoonover, he made a survey of the fifteen-acre tract upon which Martin was then living, and defined the boundaries; that later, at the instance of Schoonover, he made a survey of the sixteen-acre piece and made some marks upon the ground to define its boundaries; and that this was done for the purpose of the conveyance of the "surface." Being asked upon cross-examination what he understood by "surface" he answered, "The surface alone, no timber at all."   He also testified that he drew a deed from Schoon-

over to Martin for the fifteen-acre lot, but the deed was
not produced at the trial and there is no evidence that
it was executed. This witness, when recalled by the de-
fendants, testified that in a conversation which took
place at the time of the second survey, Schoonover said
to Martin, referring to the sixteen-acre tract, "I don't
want you to go there and begin to cut and burn out the
timber like those people up the road did," and that Mar-
tin replied that he would not.

In January, 1906, when the plaintiff went to live on
the fifteen-acre tract there were upon it a shanty and a
barn. The evidence is that at that time the timber on
that tract had been substantially removed but that the
sixteen-acre tract was well timbered. During his occu-
pancy he built a new house on the fifteen-acre tract,
completed a well that Martin had begun, built some
fences, cleared three or four acres of the sixteen-acre lot
and cut timber on that lot for fences and firewood. Mrs.
Thompson, a witness called by the defendant, testified
upon cross-examination that she was present when the
plaintiff and Mr. Schoonover, her father, "closed up
their deal about the deed." Being asked what the deal
was, she answered, "It was all paid except $10.00 and
Mr. Schoonover was to make the deed to Mr. Olfsheskey
and he was to lift it when he paid the $10.00; the deed was
left at our house; before it was lifted Mr. Schoonover
died." Subsequently to this interview, according to her
testimony, Mr. Schoonover brought a deed to her house
where he was living, which she thought was prepared by
Mr. Reese. "It was to be made, Mr. Olfsheskey knew
nothing about it, the deed was afterwards made and
brought there and father brought it there himself." Al-
though Mrs. Thompson testified she saw the deed, she
was unable to tell what it contained. It was not pro-
duced at the trial.

As already noticed, the defendants acquired their deed
for the timber in December, 1906, and the cutting of
timber on the sixteen-acre lot was completed in June,

1908.  The evidence is uncontradicted that the plaintiff made no protest or objection and gave no notice of his claim of title at the public sale of the timber to the defendants, or while they were cutting and removing it, and that afterwards he claimed and received compensation for hauling the logs from the sixteen-acre tract across the fifteen-acre tract upon which he lived.

Bearing in mind that in any view of the case the legal title to the land was vested in O. L. Schoonover at his death, and that the legal title to the timber on the sixteen-acre tract passed to the defendants by the grant made in December, 1906, it is perceived that the defendants were not mere intruders and that, as against them, it was incumbent on the plaintiff to establish his alleged equitable title by the quality and quantity of proof required to avoid the operation of the statute of frauds and perjuries.  In Hart v. Carroll, 85 Pa. 508, it was said: "In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof.  The evidence must define the boundaries and indicate the quantity of the land.  It must fix the amount of the consideration.  It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained.  And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust."  These rules were settled by a long line of prior decisions, many of which are cited in the opinion of Mr. Justice WOODWARD and have been recognized and approved in many late cases, among which may be mentioned Sample v. Horlacher, 177 Pa. 247; Wright v. Nulton, 219 Pa. 253; Weller v. Potts, 230 Pa. 6.  The evidence thus far alluded to, while showing that the plaintiff succeeded Martin in the occupancy of the prem-

ises, fails to show that he did so pursuant to a sale by Martin to him, or that there was any contract between them relating to the premises. We have not overlooked the receipt put in evidence by the plaintiff in rebuttal. It reads as follows: "Reseved of August Olfsheskey on the 13 day of Janery 1906 full payment for the farme. 700$. Luis Martin." The execution and delivery of this receipt by Martin were not legally proved, but even if they had been, the paper would have been ineffectual as proof of a contract relating to this land. Nor is the vague and indefinite testimony of Mrs. Thompson sufficient to establish a parol sale directly from Schoonover to Martin of these two tracts. Her testimony tends to show, it is true, that Schoonover was to make a deed to the plaintiff upon payment of $10.00, balance of purchase money, but what was to be conveyed by the deed is an indispensable essential to a valid parol sale which is left wholly to surmise. Nor, we add, does the plaintiff's statement of claim aver a sale directly from Schoonover to the plaintiff. What it avers is that Schoonover contracted to sell to Martin, and the latter sold to the plaintiff. And this contention was adhered to in the points for charge presented by the plaintiff, particularly in the point recited in the ninth assignment of error. Therefore as the foundation of the case, as stated by himself, he was bound to prove the essentials of a valid parol contract of sale by Schoonover to Martin. The testimony of Mr. Reese bears on that question, but when it is carefully scrutinized it is seen that it falls far below the standard set by the decisions. It would warrant a finding that a conveyance by Schoonover to Martin was contemplated and, perhaps, an inference that there was a contract of some sort between them relating to these two tracts. Even as to the existence of a contract, pursuant to which Martin entered, the testimony can scarcely be considered clear, precise and satisfactory, and as to the terms of the contract it is wholly lacking. Moreover, the testimony of the witness from which the exist-

ence of a contract is sought to be inferred shows with equal clearness that, so far as the sixteen-acre tract is concerned, the contract, if there was one, did not include the timber standing on the tract. And, as already pointed out, the conduct of the plaintiff was plainly inconsistent with the conclusion that it was included. But, without regard to the last-mentioned consideration, we hold that the oral evidence adduced by the plaintiff was insufficient to establish in him an equitable title in parol which would prevail against the deed made to the defendants in December, 1906, and entitle him to sue them in trespass for cutting and removing the timber on the sixteen-acre tract. This conclusion is reached by applying the well-settled legal and equitable principles enunciated or approved in the cases above cited and many other kindred cases that might be cited.

There remains to be considered the effect of the deed of October 1, 1908, from the executor of Schoonover, who died in September, 1906, to the plaintiff. This deed recites a power of sale contained in his will, and a decree of the orphans' court authorizing the executor to execute such deeds, conveyances and assurances as might be legally required for carrying out the power of sale. It purports to convey to the plaintiff the two tracts of land heretofore referred to, and, after describing them by metes and bounds, proceeds as follows: "Being the same premises O. L. Schoonover in his lifetime by verbal contract agreed to sell to Luis Martin on the 13th day of January, 1906, sold the same to August Olfsheskey, as appeared by a receipt of that date." The deed contains a reservation of the coal, fire clay, oil, gas and other minerals, but not of the timber. Inasmuch as it was not executed until after the defendants had cut and removed the timber under the grant of December, 1906, the omission of a reservation of the timber furnishes no evidence of an intention on the part of the executor to have it relate back and nullify that grant, and, of course, it was not within his power to do so, even if he had intended. Nor,

in the issue being tried, was the above-quoted recital evidence against the defendants of the facts recited. Their title was vested when they received their deed. It could not be defeated, and they be made liable as trespassers, by admissions of the executor, made after the timber had been cut and removed, that the timber had previous to the grant been sold as part of the land to other persons. Nor does the fact that the admissions are contained in a deed affect the principle. No title can be divested by a mere recital in a deed, or by any form of deed to which the holder of the title is not a party: Tate v. Clement, 176 Pa. 550. Speaking of the rule of law as to recitals as evidence against the grantor and persons claiming by title derived from him subsequently, Chief Justice TILGHMAN said: "What is the reason of this rule? It is this, the recital amounts to a confession of the party, and that confession is evidence against himself and those who stand in his place. But such confession can be no evidence against a stranger. It can be no evidence against one who claims by title derived from the person making the confession, before the confession made, because he does not stand in the place of the person making the confession; he claims paramount the confession. One who has conveyed his right, can by no subsequent confession affect the right which he has conveyed. Nor can any confession by him, alter the general rule of evidence with respect to the person to whom he has conveyed:" Penrose v. Griffith, 4 Binn. 231. We conclude that the insufficiency of the oral evidence is not helped out by the terms of the deed in question or by its recitals.

It follows from the foregoing conclusions upon these features of the case that the request for binding instructions and the subsequent motion for judgment in favor of the defendants non obstante veredicto should have been granted. This conclusion renders it unnecessary to discuss the assignments of error raising other questions.

The judgment is reversed and judgment is entered for the defendants.